72 U.S. 462 (____)
5 Wall. 462
LICENSE TAX CASES.
UNITED STATES
v.
VASSAR.
UNITED STATES
v.
SCHUREMAN.
UNITED STATES
v.
GREEN.
UNITED STATES
v.
BEATTY.
UNITED STATES
v.
SHELLY.
UNITED STATES
v.
BOWEN.
UNITED STATES
v.
SWAIN.
UNITED STATES
v.
CRAFT.
UNITED STATES
v.
CRAFT.
Supreme Court of United States.

*465 The different cases were argued here for the different defendants by different counsel, Mr. W.M. Evarts representing the defendants in the New York cases, Mr. Senott the defendant in the case from Massachusetts, and Mr. Woodbury (by brief), one of the defendants in the cases, each like the other, from New Jersey.
Mr. Speed, A.G. (at the last term), Mr. Stanbery, A.G. (at this), with the former of whom was Mr. Reed, A.G. of Massachusetts, contra.
*468 The CHIEF JUSTICE, having stated the case, delivered the opinion of the court.
In the argument of all the cases here before the court, it was strenuously maintained by counsel for the defendants that the imposition of penalties for carrying on any business prohibited by State laws, without payment for the license or special tax required by Congress, is contrary to public *469 policy; and illustrations of this supposed contrariety were drawn from hypothetical cases of the license of crime for revenue.
We will dispose of this objection before proceeding to consider the other important questions which these cases present.
It is not necessary to decide whether or not Congress may, in any case, draw revenue by law from taxes on crime. There are, undoubtedly, fundamental principles of morality and justice which no legislature is at liberty to disregard; but it is equally undoubted that no court, except in the clearest cases, can properly impute the disregard of those principles to the legislature.
And it is difficult to perceive wherein the legislation we are called upon to consider is contrary to public policy.
This court can know nothing of public policy except from the Constitution and the laws, and the course of administration and decision. It has no legislative powers. It cannot amend or modify any legislative acts. It cannot examine questions as expedient or inexpedient, as politic or impolitic. Considerations of that sort must, in general, be addressed to the legislature. Questions of policy determined there are concluded here.
There are cases, it is true, in which arguments drawn from public policy must have large influence; but these are cases in which the course of legislation and administration do not leave any doubt upon the question what the public policy is, and in which what would otherwise be obscure or of doubtful interpretation, may be cleared and resolved by reference to what is already received and established.
The cases before us are not of this sort. The legislature has thought fit, by enactments clear of all ambiguity, to impose penalties for unlicensed dealing in lottery tickets and in liquors. These enactments, so long as they stand unrepealed and unmodified, express the public policy in regard to the subjects of them. The proposition that they are contrary to public policy is therefore a contradiction in terms, or it is intended as a denial of their expediency or their propriety. If *470 intended in the latter sense, the proposition is one of which courts cannot take cognizance.
We come now to examine a more serious objection to the legislation of Congress in relation to the dealings in controversy. It was argued for the defendants in error that a license to carry on a particular business gives an authority to carry it on; that the dealings in controversy were parcel of the internal trade of the State in which the defendants resided; that the internal trade of a State is not subject, in any respect, to legislation by Congress, and can neither be licensed nor prohibited by its authority; that licenses for such trade, granted under acts of Congress, must therefore be absolutely null and void; and, consequently, that penalties for carrying on such trade without such license could not be constitutionally imposed.
This series of propositions, and the conclusion in which it terminates, depends on the postulate that a license necessarily confers an authority to carry on the licensed business. But do the licenses required by the acts of Congress for selling liquor and lottery tickets confer any authority whatever?
It is not doubted that where Congress possesses constitutional power to regulate trade or intercourse, it may regulate by means of licenses as well as in other modes; and, in case of such regulation, a license will give to the licensee authority to do whatever is authorized by its terms.
Thus, Congress having power to regulate commerce with foreign nations, and among the several States, and with the Indian tribes, may, without doubt, provide for granting coasting licenses, licenses to pilots, licenses to trade with the Indians, and any other licenses necessary or proper for the exercise of that great and extensive power; and the same observation is applicable to every other power of Congress, to the exercise of which the granting of licenses may be incident. All such licenses confer authority, and give rights to the licensee.
But very different considerations apply to the internal commerce or domestic trade of the States. Over this commerce and trade Congress has no power of regulation nor *471 any direct control. This power belongs exclusively to the States. No interference by Congress with the business of citizens transacted within a State is warranted by the Constitution, except such as is strictly incidental to the exercise of powers clearly granted to the legislature. The power to authorize a business within a State is plainly repugnant to the exclusive power of the State over the same subject. It is true that the power of Congress to tax is a very extensive power. It is given in the Constitution, with only one exception and only two qualifications. Congress cannot tax exports, and it must impose direct taxes by the rule of apportionment, and indirect taxes by the rule of uniformity. Thus limited, and thus only, it reaches every subject, and may be exercised at discretion. But it reaches only existing subjects. Congress cannot authorize a trade or business within a State in order to tax it.
If, therefore, the licenses under consideration must be regarded as giving authority to carry on the branches of business which they license, it might be difficult, if not impossible, to reconcile the granting of them with the Constitution.
But it is not necessary to regard these laws as giving such authority. So far as they relate to trade within State limits, they give none, and can give none. They simply express the purpose of the government not to interfere by penal proceedings with the trade nominally licensed, if the required taxes are paid. The power to tax is not questioned, nor the power to impose penalties for non-payment of taxes. The granting of a license, therefore, must be regarded as nothing more than a mere form of imposing a tax, and of implying nothing except that the licensee shall be subject to no penalties under national law, if he pays it.
This construction is warranted by the practice of the government from its organization. As early as 1794 retail dealers in wines or in foreign distilled liquors were required to obtain and pay for licenses, and renew them annually, and penalties were imposed for carrying on the business without compliance with the law.[*] In 1802 these license-taxes and *472 the other excise or internal taxes, which had been imposed under the exigencies of the time, being no longer needed, were abolished.[*] In 1813 revenue from excise was again required, and laws were enacted for the licensing of retail dealers in foreign merchandise, as well as to retail dealers in wines and various descriptions of liquors.[] These taxes also were abolished after the necessity for them had passed away, in 1817.[] No claim was ever made that the licenses thus required gave authority to exercise trade or carry on business within a State. They were regarded merely as a convenient mode of imposing taxes on several descriptions of business, and of ascertaining the parties from whom such taxes were to be collected.
With this course of legislation in view, we cannot say that there is anything contrary to the Constitution in these provisions of the recent or existing internal revenue acts relating to licenses.
Nor are we able to perceive the force of the other objection made in argument, that the dealings for which licenses are required being prohibited by the laws of the State, cannot be taxed by the National government. There would be great force in it if the licenses were regarded as giving authority, for then there would be a direct conflict between National and State legislation on a subject which the Constitution places under the exclusive control of the States.
But, as we have already said, these licenses give no authority. They are mere receipts for taxes. And this would be true had the internal revenue act of 1864, like those of 1794 and 1813, been silent on this head. But it was not silent. It expressly provided, in section sixty-seven, that no license provided for in it should, if granted, be construed to authorize any business within any State or Territory prohibited by the laws thereof, or so as to prevent the taxation of the same business by the State. This provision not only recognizes the full control by the States of business carried on within their limits, but extends the same principle, so far *473 as such business licensed by the National government is concerned, to the Territories.
There is nothing hostile or contradictory, therefore, in the acts of Congress to the legislation of the States. What the latter prohibits, the former, if the business is found existing notwithstanding the prohibition, discourages by taxation. The two lines of legislation proceed in the same direction, and tend to the same result. It would be a judicial anomaly, as singular as indefensible, if we should hold a violation of the laws of the State to be a justification for the violation of the laws of the Union.
These considerations require an affirmative answer to the first general question, Whether the several defendants, charged with carrying on business prohibited by State laws, without the licenses required by acts of Congress, can be convicted and condemned to pay the penalties imposed by these acts?
The remaining question is, Whether the defendant, indicted for carrying on a business on which a special tax is imposed by the internal reveuue law, but which is prohibited by the laws of New York, can be convicted and condemned to pay the penalty imposed for not having paid that tax?
What has been already said sufficiently indicates our judgment upon this question.
Congress, in framing the act of 1866, has carefully guarded against any misconstruction of the legislative intention by substituting throughout the term "special tax" for the word "license." This judicious legislation has removed all future possibility of the error which has been common among persons engaged in particular branches of business, that they derived from the licenses they obtained under the internal revenue laws, an authority for carrying on the licensed business independently of State regulation and control. And it throws, moreover, upon the previous legislation all the light of a declaratory enactment. It fully confirms, if confirmation were needed, the view we have already expressed, that the requirement of payment for licenses under former laws was a mere form of special taxation.
*474 The act of 1866 contains the same provision in respect to the effect of special taxes which the original act of 1864 contained in respect to licenses. It provides expressly that the payment of the taxes imposed by it shall not exempt any person carrying on a trade or business from any penalty or punishment provided by State laws for carrying on such trade or business, or authorize the commencement or continuance of any such trade or business contrary to State laws, or prevent the imposition of any duty or any tax on such trade or business by State authority.
It was insisted by counsel that whatever might be the power, it could not have been the intention of Congress to tax any business prohibited by State laws. And the argument from public policy was much relied upon in support of this view.
We think it unnecessary to repeat the answer already made to this argument, when urged against the requirements of licenses. It is, if possible, less cogent against the direct imposition of a tax on a prohibited business than against the indirect imposition.
It may, however, be properly said that the law of 1866 was enacted after the arguments of the last term, and that Congress imposed these special taxes with the distinct understanding that several branches of business thus taxed were prohibited by State legislation. This is conclusive as to the intention. The hypothesis we are asked to adopt would nullify some of the plainest provisions of the act, and is inadmissible. The question must be answered affirmatively.
Upon the whole, we conclude 
1. That licenses under the act of 1864, and the amendatory acts, conveyed to the licensee no authority to carry on the licensed business within a State.
2. That the requirement of payment for such licenses is only a mode of imposing taxes on the licensed business, and that the prohibition, under penalties, against carrying on the business without license is only a mode of enforcing the payment of such taxes.
3. That the provisions of the acts of Congress requiring *475 such licenses, and imposing penalties for not taking out and paying for them, are not contrary to the Constitution or to public policy.
4. That the provisions in the act of 1866 for the imposing of special taxes, in lieu of requiring payment for licenses, removes whatever ambiguity existed in the previous laws, and are in harmony with the Constitution and public policy.
5. That the recognition by the acts of Congress of the power and right of the States to tax, control, or regulate any business carried on within its limits, is entirely consistent with an intention on the part of Congress to tax such business for National purposes.
It follows: That in the case from the Northern District of New York, the question certified must be answered in the affirmative.
That in the five cases from the District of New Jersey, the several judgments must be reversed, and the several causes remanded to the Circuit Court for new trial, in conformity with this opinion.
That in the case from the District of Massachusetts, the two questions certified must be answered in the affirmative; and 
That in each of the two cases from the Southern District of New York, the following answer must be returned to the Circuit Court, namely: "That the law imposing the special tax in the indictment mentioned, and for the non-payment of which, said indictment was preferred and found, is valid, and not unconstitutional."
ALL WHICH IS ORDERED ACCORDINGLY.
NOTES
[*] 1 Stat. at Large, 377.
[*] 2 Stat. at Large, 148.
[] 3 Id. 72.
[] Id. 401.