In re HIRSCH.

(Circuit Court, D. Connecticut. July 1, 1896.)

EVIDENCE—PRODUCTION OF DOCUMENTS—INTERNAL REVENUE COLLECTOR.
    An internal revenue collector is not justified in refusing to produce, in
    obedience to a subpœna duces tecum issued by a state court, the appli-
    cation or return made by a person who desires to pay the tax imposed by
    the statutes of the United States upon persons engaging in the retail
    liquor business either by the nature of such documents or by alleged in-
    structions from the commissioner of internal revenue not to produce
    such papers for use in evidence in the state courts.

Chas. W. Comstock, U. S. Dist. Atty., for petitioner.
John L. Hunter, contra.

SHIPMAN, Circuit Judge. The petitioner, Heyman J. Hirsch,
filed, on May 14, 1896, in the circuit court of the United States for
the district of Connecticut, a petition, addressed to one of the
judges of the circuit court, for a writ of habeas corpus to the sheriff
of the county of Windham, in the state of Connecticut. The peti-
tion was signed by the petitioner, and was verified by his oath.
A writ of habeas corpus was issued accordingly, the sheriff brought
the petitioner into court, and he was admitted to bail. The sheriff
thereafter made his return to the writ, stating, as the cause of the
petitioner's detention and imprisonment, that he was committed
to the Windham county jail by virtue of a mittimus, dated May
13, 1896, a copy of which was annexed to the return, and issued by
authority of the superior court of the state of Connecticut, in and
for the county of Windham, and then in session.

Testimony having been offered in support both of the petition and
of the sheriff's return, the following facts were ascertained: On
May 11, 1896, a criminal information was pending and on the eve
of trial in the superior court of the state of Connecticut for the
county of Windham, against Stephen H. Cole, of Putnam, in said
county, for keeping intoxicating liquors on a named day, with intent
to sell the same unlawfully, in said Putnam, and without a license
therefor; the sale of intoxicating liquors not being lawful or per-
mitted in said town, at said time, by the statutes of the state of
Connecticut. On said day a subpœna duces tecum was issued by
the proper authority who was duly empowered to issue the same,
directed to H. J. Hirsch, deputy United States internal revenue
collector, residing in Norwich, in the county of New London, and
commanding him to appear before said superior court on May 12th,
to testify his knowledge in said criminal cause, and to bring with
him any and all papers, applications, or books in his possession
showing that said Cole had paid a tax to the United States, or
received a license from the United States for the sale in Putnam
of spirituous or intoxicating liquor for the years 1895 and 1896,
or any portion of said years. In accordance with the usages of
the internal revenue department, a retail liquor dealer who desires
to pay the special tax imposed by the statutes of the United States
upon a person in that business makes a written return to the

revenue collector in his district, which declares his intention to sell distilled spirits as a retailer for a specified time, and declares his payment of the tax; and it has been decided by the court of last resort in the state of Connecticut that such a return, with the payment of a tax thereon, is admissible evidence of an intent to sell intoxicating liquor, upon the trial of an information for an intent to sell unlawfully against the person who makes and signs the return. State v. Teahan, 50 Conn. 92. The states of Connecticut and Rhode Island constitute an internal revenue district, and Mr. John C. Byxbee has been, during the years 1895 and 1896, the collector for said district, with his main office in Hartford. The counties of New London and Windham, and a part of Tolland county, constitute a subdistrict, of which Heyman J. Hirsch is the deputy collector, his office being at Norwich, and to him the retail liquor dealers residing in his district make and have made the described returns, which are first forwarded to the Hartford office and then are returned and kept on file in the Norwich office. The subpoena having been duly served upon Hirsch on May 11th by a deputy sheriff for the county of New London, Hirsch appeared and became a witness before the court upon the trial of said information on May 13th, and informed the court that he had some of the papers called for in the subpoena; that the statement by Cole of his intention to sell intoxicating liquor in Putnam was, if made, in his office; that he declined to produce any papers which showed anything on the part of Cole with relation to the declaration of his intention or the payment of a tax as a liquor dealer to the United States; and, upon being informed by the court that he must comply with the subpoena or be committed for contempt of court, refused to do so, upon the ground that he was acting under instructions. He was thereupon committed for contempt, and the mittimus truly recites that he had in his possession, in his office, at Norwich, Conn., "the papers, applications, and books referred to in the subpoena aforesaid, and some of them relative to the matter referred to and named in the subpoena, but neglected and refused, and still neglects and refuses, to produce said papers, applications, or books, * * * in obedience to the order of the court to produce the same, or stand committed until he shall have complied with said order."

The petition for the writ was brought solely by virtue of section 753 of the Revised Statutes. The district attorney who brought the petition rightly deemed that section 643 was not applicable. Section 753 provides that the writ of habeas corpus, which the courts of the United States have power to issue, extends to a prisoner in jail, when he is in custody for an act done or omitted in pursuance of a law of the United States, or of an order, process, or decree of a court or judge thereof. If the petitioner's refusal was not justified by a law of the United States, this court is without jurisdiction. He did not act, in his refusal, under an express statute of the United States, but under what is alleged to be a rule or regulation of the commissioner of internal revenue, and having the force of law.

Before considering the character of this rule or regulation, a brief recurrence to the principles or established usages respecting the production in court of official, records, registers, or books kept for use by public officers, or detached documents of a public nature as evidence, may be desirable. Prof. Greenleaf, speaking of the admissibility of official books or registers, says, in substance (1 Greenl. Ev. § 484):

They "therefore are recognized by law, because they are required by law to be kept, because the entries in them are of public interest and notoriety. and because they are made under the sanction of an oath of office, or, at least, under that of official duty. They belong to a particular custody, from which they are not usually taken out but by special authority, granted only in cases where inspection of the book itself is necessary, for the purpose of identifying the book or the handwriting, or of determining some question arising upon the original,entry, or of correcting an error which has been duly ascertained. Books of this public nature, being themselves evidence, when produced, their contents may be proved by an immediate copy, duly verified."

Books of assessment of public rates and taxes are of this description. He further says (section 485):

"When the books themselves are produced, they are received as evidence, without further attestation. But they must be accompanied by proof that they come from the proper repository. Where the proof is by a copy, an examined copy, duly made and sworn to by any competent witness, is always admissible. Whether a copy, certified by the officer having legal custody of the book or document, he not being specially appointed by law to furnish copies, is admissible, has been doubted; but, though there are decisions against the admissibility, yet the weight of authority seems to have established the rule that a copy given by a public officer whose duty it is to keep the original ought to be received in evidence."

It is to be observed that the question of the production or the admissibility of books or registers was not actually in this case. That which was known to be wanted was the paper signed by Cole, sometimes called "a return" and sometimes called "an application," which declared his intention to be a retail liquor dealer, and the payment of the tax. These applications are not of a private or secret character, because, under section 3240 of the Revised Statutes, each collector of internal revenue is required to keep conspicuously in his office, for public inspection, an alphabetical list of all persons who shall have paid special taxes within his district, and to state therein the time, place, and business for which such special taxes have been paid. It is further to be observed that the original paper, rather than a copy, was or might be needful in order to identify and prove the signature of Cole, and, furthermore, that, inasmuch as Hirsch declined to produce any papers or applications, the court was not called upon to ascertain whether books—that is, volumes— or only copies of parts of books were needed. The question at issue, therefore, relates to the refusal of Hirsch to produce, in obedience to the order of the court, any paper in his possession as deputy collector pertaining to the intention or the fulfillment of the intention of Cole to be a retail liquor dealer.

The foundation of the petitioner's case is an alleged rule or regulation of the commissioner of internal revenue prohibiting the col-

lectors to produce in state courts any papers or documents relating to the business of the taxpayer, upon prosecutions for violations of state laws in regard to the sale of intoxicating liquor, against those who have paid a special tax. Section 321 of the Revised Statutes directs the commissioner, under the direction of the secretary of the treasury, to prepare and distribute all the instructions, regulations, directions, forms, blanks, stamps, and other matters pertaining to the assessment and collection of internal revenue. Section 251 authorizes the secretary of the treasury to prescribe rules and regulations, not inconsistent with law, to be used under and in the execution and enforcement of the various provisions of the revenue laws. Regulations made by the head of one of the departments of the government, in pursuance of a statute authorizing them to be made, have the force of law over those to be affected thereby. The regulations of the navy and the army regulations are illustrations of this class of rules. U. S. v. Eliason, 16 Pet. 291; Gratiot v. U. S., 4 How. 80. No regulation upon the subject now under examination is contained in the printed book of general regulations which has been issued for the guidance of internal revenue officers. Such general regulation, if it had been made, would not seem to be in harmony with the principle of internal revenue legislation, that the payment of the taxes which it imposes affords no immunity from punishment for violation of a law of the state prohibiting the sale of distilled liquors. The government of the United States does not undertake to interfere with the statutory system of a state for the protection of its citizens against the unlicensed sale of intoxicating liquor. License Tax Cases, 5 Wall. 462; Pervear v. Massachusetts, Id. 475.

Section 3243 of the Revised Statutes, which was passed in 1866, for the purpose of fully declaring this principle is as follows:

"The payment of any tax imposed by the internal revenue laws for carrying on any trade or business shall not be held to exempt any person from any penalty or punishment provided by the laws of any state for carrying on the same within such state, or in any manner to authorize the commencement or continuance of such trade or business contrary to the laws of such state or in places prohibited by municipal law; nor shall the payment of any such tax be held to prohibit any state from placing a duty or tax on the same trade or business, for state or other purposes."

The commissioner of internal revenue has, in two known instances, by letters addressed to two collectors, advised them of his views upon some branches of this subject. The first letter, dated December 31, 1887, was addressed to Mr. Alexander Troup, the collector for the district of Connecticut, in which the acting commissioner said, in reply to Mr. Troup's request for instructions:

"It is no part of your duty under the law to certify that a copy of your alphabetical list of special tax papers, made by these prosecuting agents, for other purposes than those contemplated by the internal revenue laws of the United States, is correct and true."

The next letter, dated March 31, 1888, was sent by the commissioner to Mr. Calvin Page, collector at Portsmouth, N. H., and was published in 34 Int. Rev. Rec. 261. It advises or directs him to respond to subpoenas of the state court, but to decline to produce the

alphabetical list or the returns on form 11 for use on the trial of persons indicted for selling distilled spirits contrary to the state laws. The commissioner was of opinion that a state court had no legal right to compel the production of the records in question, and that the communications of the taxpayers were privileged, and were for revenue purposes alone, and should not be admitted in evidence.

This letter and others of like character, which may be presumed to exist, are not the regulations in regard to the assessment of the internal revenue which have the force of a statute. They express the views of an officer of the government upon the power of the state courts, and upon the propriety of admitting this class of testimony in cases of prosecution for the violation of state laws; and, while they are entitled to respectful consideration, they neither authoritatively declare general principles, nor establish general rules in regard to the subject of obedience to the orders of a court in the matter of evidence. They are not general regulations, but are instructions based upon the commissioner's legal opinion of the powers of a court in a particular class of cases.

But it is not intended to take too narrow a view of the language of the habeas corpus section (Rev. St. § 753), and to insist that the act must be done or omitted in pursuance of a statute or written regulation, or publicly declared decision, because the word "law" has, in certain cases, a wider signification. The supreme court, when discussing the right of a court of the United States to extend the benefit of a writ of habeas corpus to a deputy marshal, imprisoned in a state court for an act done in protecting the life of a judge of a court of the United States who was engaged in the discharge of his official duty, said:

"In the view we take of the constitution of the United States, any obligation fairly and properly inferable from that instrument, or any duty of the marshal to be derived from the general scope of his duties under the laws of the United States, is 'a law,' within the meaning of this phrase." In re Neagle, 135 U. S. 1, 10 Sup. Ct. 658.

It may be said that the duty naturally devolves upon the commissioner of internal revenue to protect from inspection, and to preserve and to control the use of, the papers or documents of the United States, and that section 161 of the Revised Statutes recognizes this duty by authorizing the head of each department to prescribe regulations, not inconsistent with law, for the custody, use, and preservation of the records, papers, and property belonging to it, and that the refusal of Hirsch was in pursuance of this obligation, and was therefore in pursuance of law. It has already been stated that no duty of protecting this class of papers from the knowledge of the public devolved upon the internal revenue bureau, because section 3240 expressly provides that an alphabetical list of special taxpayers, with the business of each, shall be publicly exhibited. The natural duty to preserve and to control the use of documents of the bureau does not mean such a control as to keep this class of papers beyond the reach of the courts of the country; for, if there is nothing in them which the taxpayer has a right to

demand should be secret, or which can injure the public welfare or interest, the fact that they are papers of the United States does not make them superior to the ordinary means provided by law for the production of private and public papers for use in courts.

Inasmuch as it may be well to look at the validity of the reasons for the commissioner's instructions, turning, first, to the subject of the power of courts in this regard, there is no distinction between the power of a state court and of a federal court to obtain the production of this class of testimony. Cases of a civil nature may naturally arise in the courts of the United States in which it is important to prove that one of the parties intended to occupy and did occupy a certain shop on a certain street during a specified period, and his written declaration to that effect, verified by his signature, and perhaps by his oath, may be important to aid in proving the desired fact. If the legal position upon which the second letter of the commissioner was based in regard to the power of a state court is correct, such evidence in a civil case before any court is to be prohibited; and if the papers in an internal revenue office with respect to applications for the sale of intoxicating liquors are rightfully inaccessible, the same must be true in regard to papers with respect to the sales of tobacco, cigars, cigarettes, and oleomargarine.

Upon the subject of power generally in courts of common law to compel by subpœna duces tecum the production of written papers to be used as evidence, the question with respect to both private and public or official documents was carefully considered, and was settled by the judges of the court of king's bench in 1808, who decided that such power existed, that a subpœna was the proper method, and who, speaking by Lord Ellenborough, said that:

"The right to resort to means competent to compel the production of written as well as oral testimony seems essential to the very existence and constitution of a court of common law, which receives and acts upon both descriptions of evidence, and could not possibly proceed with due effect without them." Amey v. Long, 9 East, 472.

The court intended to assert the general power, but took occasion to say that exceptional cases would arise where it would not be enforced, as, for instance, that a witness would not be compelled to produce papers which he obtained confidentially as counsel or attorney. King v. Dixon, 3 Burrows, 1687; Miles v. Dawson, 1 Esp. 405; Bateson v. Hartsink, 4 Esp. 43.

The question, then, becomes one, not of power generally, but whether this class of evidence has any special immunity peculiar to itself, or whether the officers of the revenue have a special reason for exemption as witnesses. An indefinite idea exists that there is an unfairness in being a vehicle by means of which this evidence is obtained; but there can be no implied obligation upon the government, because it has received a special tax from an offender against the laws of the state, to shield him from the consequences of his act. Such an idea is at variance with the statutes and the decisions of the supreme court.

It is next said that these returns are privileged. It is probable that a statute could declare that communications of taxpayers to a board of assessors or officers of a similar character should be privileged, and that no returns can be examined by any one, or be reached for examination by legal process. The thirty-fourth section of the act of August 27, 1894, which endeavored to make income tax returns entirely free from examination or inspection by unauthorized persons, did not go so far as to say that they could not be subject to examination by courts, but declared their freedom from examination "except as provided by law." In the absence of such provisions the returns now in question are no more privileged than other taxpayers' returns, in the sense that they must be kept secret, and cannot be produced for the purpose of evidence in a legal proceeding by order of court.

The remaining objection is that the officers may be subjected to inconveniences and to interruption in the discharge of their official duties. It is undoubtedly true that such occasional inconvenience will take place; but, so far as objections from this cause are concerned, the obligations of the officers of the internal revenue department, in regard to conformity with the requirements of a court for the production of books and papers, are much like the obligations of the members of a large mercantile firm or the officers of a business corporation. Individuals are compelled to furnish this class of evidence in cases in which they have no interest; and, though the officers of corporations have urged the inconvenience of being compelled to carry their books into court for the benefit of others, such an objection has not prevailed in the federal courts. "It may be inconvenient, and sometimes embarrassing, to the manager of a corporation to require its books and papers to be taken from its office and exhibited to third persons, but it is also inconvenient and often onerous to individuals to require them to do the same thing. Considerations of inconveniences must give way to the paramount right of litigants to resort to evidence which it may be in the power of witnesses to produce, and without which grave interests might be jeoparded, and the administration of justice thwarted." Wertheim v. Trust Co.,15 Fed. 716. As a matter of course, a court will exercise its sound discretion with reference to the necessities of the case, and will not ordinarily compel the detention of books which are in daily use, or compel public officers to bring public documents into court when the production of copies will equally answer the purpose. Corbett v. Gibson, 16 Blatchf. 334, Fed. Cas. No. 3,221; Delaney v. Regulators of City of Philadelphia, 1 Yeates, 403.

The point was made by the petitioner that he did not have the legal control of the papers, which were in the legal control of the collector for the district; and the case of Bank v. Hillard, 5 Cow. 158, was cited, in which it was held that the clerk of a banking corporation was not bound to produce its books, upon a subpoena duces tecum, the cashier being the proper custodian. In this case the collector's office was at Hartford, while the petitioner's office

was at Norwich, where the papers were actually kept and were in his actual custody. It is not necessary to serve a subpœna upon the person who is merely technically in control, but who is not in the town, and not in charge of the office where the papers are actually kept. The person in actual possession, as the head of the office where the papers are kept, should produce them. Corsen v. Dubois, 1 Holt, 239; Amey v. Long, 1 Camp. 17.

The writ of habeas corpus is dismissed.