## UNITED STATES v. HARDISON.

(District Court, S. D. Georgia, W. D. January 20, 1905.)

1. PERJURY — INTERNAL REVENUE BOND — SURETIES—JUSTIFICATION—OATHS—DEPUTY COLLECTOR—POWERS.

Rev. St. § 3165, as amended by Act Cong. March 1, 1879, c. 125, § 2, 20 Stat. 329 [U. S. Comp. St. 1901, p. 2057], authorizes every collector and deputy collector to administer oaths touching any part of the administration of the internal revenue laws, or where such oaths are authorized by law, or by regulations authorized by law. Internal Revenue Laws 1900, p. 47, § 321 (Rev. St. U. S. § 321 [U. S. Comp. St. 1901, p. 186]), gives the internal revenue commissioner general supervision of the collection of taxes imposed by any internal revenue law, and authorizes him to prepare and distribute instructions, regulations, etc., pertaining thereto; and one of the regulations providing for the collection of taxes on distilled spirits required collectors to examine distillers' sureties, and to require them to "justify" on a prescribed form. *Held*, that under such provision an oath taken by a distiller's surety, with reference to his qualifications, before a deputy collector, was an oath taken in a case in which "a law of the United States authorizes an oath to be administered," within Rev. St. U. S. § 5392 [U. S. Comp. St. 1901, p. 3653], defining perjury.

2. SAME—STATE LAW.

Where defendant swore falsely, as to his qualifications to become a surety on a distiller's bond, before a deputy internal revenue collector, he was properly charged with perjury thereon, as defined by Rev. St. U. S. § 5392 [U. S. Comp. St. 1901, p. 3653], though under the state law perjury could only be committed in a judicial proceeding, other false oaths being defined and punished as "false swearing."

3. SAME—NOTARIES PUBLIC—JUSTICE OF THE PEACE.

Act Cong. March 15, 1876, c. 304, 19 Stat. 206 [U. S. Comp. St. 1901, p. 662], provides that notaries public of the several states, etc., are authorized to take affidavits in the same manner and with the same effect as commissioners of the United States Circuit Court may lawfully take or do. *Held*, that since a United States commissioner was authorized by Act Cong. May 28, 1896, c. 252, 29 Stat. 184 [U. S. Comp. St. 1901, pp. 499, 500], to take the oath of a proposed surety on a liquor distiller's bond, on which perjury might be assigned, an indictment for perjury in the taking of such oath was not defective on the ground that the officer administering it styled himself as "notary public and ex officio justice of the peace."

Alexander Akerman, Asst. U. S. Atty.

M. G. Bayne and Minter Wimberly, for defendant.

SPEER, District Judge. The defendant, Henry G. Hardison, is under indictment for perjury charged in several counts. It is charged that the accused offered to become a surety on the warehousing bond of a distiller of spirits within the collection district. He went before one Calvin McCarthy, a deputy collector of internal revenue, was duly sworn, and made and subscribed to certain written declarations relating to his sufficiency as such surety, and made oath before McCarthy that such declarations were true, when it is alleged that such statements were false and the accused knew them to be false. The technical phraseology adopted in the indictment is that usual in cases of perjury, but for brevity this is omitted. The material statements alleged to be false are that Hardison was the owner in fee of certain lots of land which were not incumbered,

when in point of fact it is charged he was not the owner of such lots; that previously to signing said declaration he had made, executed, and delivered to the British-American Mortgage Company, Limited, a certain deed to secure debt in the sum of $2,200, due said company, which conveyed the title to the tract of land to his creditor; that this debt was due, and, as a consequence, that Hardison had no title to the land. Other counts present similar charges. One count recites that the oath alleged to be false was taken before James D. Dossey, a notary public and ex officio justice of the peace of the county of Crawford, state of Georgia. It is alleged in all the counts that McCarthy, the deputy collector, or Dossey, the notary public and justice of the peace, had competent authority to administer oaths. On arraignment the defendant demurred in writing to the indictment, on the ground that the oath taken before McCarthy, the deputy collector, was not an oath authorized by any law of the United States to be made by sureties on such bonds as that set out in the indictment, and that for this reason counts 1, 2, 3, and 4 are fatally defective and should be quashed. The second ground of demurrer is that no specified oath authorized by law was duly administered to the defendant, nor did he subscribe any specified affidavit required by law, nor that he was duly sworn before subscribing to any such affidavit. Another ground is that the indictment is fatally defective in that the affidavit alleged to have been signed by the defendant is not set out in the indictment, nor is it alleged that the affidavit was authorized by the law of the United States. The fourth ground of demurrer is that J. D. Dossey, notary public and ex officio justice of the peace, was not an officer qualified to administer an oath under the laws of the United States. The indictment is framed under section 5392, Rev. St. [U. S. Comp. St. 1901, p. 3653].

In support of the demurrer it is insisted by counsel for the accused that the oath taken before the deputy collector was not taken in a case in which a law of the United States authorizes an oath to be administered. In reply to this contention the assistant district attorney directs the attention of the court to section 3165, as amended by section 2, Act March 1, 1879, c. 125, 20 Stat. 329 [U. S. Comp. St. 1901, p. 2057].

This section, thus amended, provides:

"Every collector and deputy collector and inspector is authorized to administer oaths and take evidence touching any part of the administration of the internal revenue laws with which he is charged, or where such oaths and evidence are authorized by law or regulations authorized by law to be taken."

The words "or regulations authorized by law" did not appear in the original act, which became the law on June 30, 1864. It appears, then, that before the amendment the deputy collector could not administer oaths and take evidence unless "authorized by law." No regulation of the department had empowered that officer to perform this function. Since the amendment, however, so far as the act of Congress could give the power, such officer can take oaths and evidence authorized by a regulation, which itself must be

authorized by law. In section 321 of the internal revenue laws, as compiled under the direction of the commissioner of internal revenue and printed in the compilation of 1900 (page 47), Rev. St. U. S. § 321 [U. S. Comp. St. 1901, p. 186], we find this language:

"The commissioner of internal revenue under the direction of the Secretary of the Treasury shall have general superintendence of the assessment and collection of all duties and taxes now or hereafter imposed by any law providing internal revenue and shall prepare and distribute all the instructions, regulations, directions, forms, blanks, stamps, and other matters appertaining to the assessment and collection of internal revenue."

Now, it is plain that to require a sufficient bond from a distiller, who is himself liable to the government for his share of the taxation imposed by law, is a part of the duty of collecting taxes. It is to obtain surety for the taxes due; in other words, to make the collection certain. To accomplish this, the commissioner is thus empowered to prepare and issue regulations. This power was granted by act of Congress, and it follows that, being thus endowed with legislative authority to make the regulations, we have but to determine if the commissioner has made a regulation pertinent to the particular subject under discussion. Turning to the regulations and instructions concerning the tax on distilled spirits, printed in 1895, we find this provision:

"Collectors will in addition to a careful and searching examination of the sufficiency of all sureties offered, require the sureties to justify on form 33 in such amounts as are safe, prudent and adequate to save the government harmless from loss, which amounts should not be less than the penal sum of the bond."

Now, what may be done by a collector may be done by a deputy collector. Qui facit per alium, facit per se. We have, moreover, seen from section 3165, as amended, that a deputy collector is expressly empowered to administer oaths when authorized by such regulation as that just quoted. Thus it is clear that by virtue of this regulation, construed in connection with section 3165, as amended, and form 33, which presents the particular oath required by the Treasury Department, the deputy collector is empowered to administer that particular oath to one seeking to justify as a surety on any bond relating to the collection of internal revenue taxes. The word "justify" in this sense must be understood to have the same meaning as when used with regard to sureties on a bail bond. Bouvier's Law Dictionary, art. "Bail." It is the proceeding by which bail establish their ability to perform the undertaking of the bond or recognizance. Bouvier, art. "Justification." As we have seen, a distiller's or warehousing bond is a part of the familiar system for the collection of this species of taxes. From these considerations it seems clear that the deputy collector, in the meaning of section 5392, Rev. St. [U. S. Comp. St. 1901, p. 3653], is an officer who is competent to administer an oath, and that the laws of the United States authorize the administration of the particular oath described in the indictment. It is true that the deputy collector finds his authorization in the regulation of the department, but we have seen that this regulation was made in pursuance of

an act of Congress, and that it is well settled that the regulations thus made have the force of law. United States v. Eliason, 16 Pet. 291, 10 L. Ed. 968; Ex parte Reed, 100 U. S. 13, 25 L. Ed. 538. In the case of U. S. v. Ormsbee (D. C.) 77 Fed. 209, it was held that the regulations of the Secretary of War for the use of canals have the force of law. In re Hirsch (C. C.) 74 Fed. 931, it was held that regulations by the head of a department have the force of law. In Re Huttman (D. C.) 70 Fed. 702, it was held that regulations approved by the commissioner of revenue have the force of statutes. Many other authorities to the same effect might be cited, but these will suffice.

It is, however, insisted that perjury cannot be assigned upon an oath thus taken, even though its substance is known by the affiant to be false. It is true that by virtue of the provisions of the criminal law of this state the objection would seem to be well taken. Perjury can be committed only in a judicial proceeding. There is, however, a statutory provision of the state law for the punishment of false swearing, and, if we were proceeding under the classification there adopted, the charge against the accused must be classed as false swearing rather than as perjury. In other words, the state law seems to adopt the common-law definition of perjury. It is, however, true that there is no common law of the United States in criminal cases; each crime is the creation of the statute defining it, and it is competent for Congress to designate that as perjury which, in a state where the common law prevails, would be treated as false swearing. This question was closely discussed by Mr. Justice Brewer in Caha v. United States, 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415. It was there held that false swearing in a land contest before a local land office in respect of a homestead entry is perjury within the scope of Rev. St. § 5392. In that case it will be conceded that there was a contest judicial in its nature. The court there, however, reaffirms the doctrine as announced in U. S. v. Bailey, 9 Pet. 250, 9 L. Ed. 113. In this case Justice Story delivered the opinion of the court. The defendant, John Bailey, was indicted under a provision of an act of Congress which provides that, if any person shall swear or affirm falsely touching the expenditures of public money or in support of any claim against the United States, he or she shall, upon conviction therefor, suffer as if for willful and corrupt perjury. The oath was taken before a justice of the peace who was authorized to administer the oath, not by an act of Congress, but merely by a regulation of the Secretary of the Treasury. The contentions in that case are very clearly put by the opinion of Justice Story and the dissenting opinion of Mr. Justice McLean. There was, however, no difference in the opinion of that court that Congress had the power to make false swearing perjury and to have it punished as perjury, and it was held by the majority of the court that where an oath is taken before a state or national magistrate authorized to administer oaths in pursuance of any regulations prescribed by the Treasury Department or in conformity with the practice and usage of that department, so that the affidavit would be admissible in evidence at the department

in support of any claim against the United States, and the party swears falsely, the case is within the purview of Act 1823, c. 37, 3 Stat. p. 770. This law, as we have seen, denounced the act as perjury. In Caha's Case the court also distinguishes U. S. v. Eaton, 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591, on which the defendant's counsel here rely, and point out with clearness that there is a grave distinction between a regulation authorizing an officer of the Treasury Department to administer an oath and assigning perjury for such false oath, and a regulation like that against dealers in oleomargarine, where the Secretary of the Treasury, by regulation, imposed penalties which were not provided by the act of Congress. In one case it is a violation of a general law, which violation is intended to hinder the effective operations of government. This law has been made applicable by regulation of the appropriate executive department. In the other case it is an attempt to create a distinct penalty by a regulation of the department, which penalty Congress itself had omitted to enact, and which was therefore no part of the general law. It is, besides, true that section 5392, Rev. St., which now defines perjury, in view of the national law, is a general provision recommended by the revisers of the statutes to take the place of numerous provisions affixing the pains and penalties of this crime every time an oath was required by any statute to be taken before either a judicial or administrative officer. Gould & Tucker's Notes on Revised Statutes, vol. 1, p. 1013. There are many cases where the United States courts have upheld convictions for perjury where the oaths were not taken in judicial trials. It is committed where the clerk of the Circuit Court makes false statements in his emolument returns and accounts for services rendered (U. S. v. Ambrose [C. C.] 2 Fed. 556; Id., 108 U. S. 336, 27 L. Ed. 746); where a false oath is taken to a pension claim before a justice of the peace (U. S. v. Hearing [C. C.] 26 Fed. 744); where one intentionally swore falsely in making returns of his income (U. S. v. Smith, 1 Sawy. 277, Fed. Cas. No. 16,341); where one intentionally omits to place part of his property on schedules in an application under the bankruptcy act (U. S. v. Nihols, 4 McLean, 23, Fed. Cas. No. 15,880); where statements which the deponent does not believe to be true are made on justification as bail (U. S. v. Volz, 14 Blatchf. 15, Fed. Cas. No. 16,627). The cases cited in opposition to this view are United States v. Maid and U. S. v. Blasingame (D. C.) 116 Fed. 650–655. These opinions were rendered by the same learned judge, and go merely to the effect that Congress has no power to define as a crime something which may thereafter be thus designated by regulations of an executive department. It does not appear necessary to the question now before the court to consider this doctrine. Here, as stated, the crime is not created by a regulation of the department, but an officer of the department is authorized to take an oath, a violation of which constitutes a crime under the general law.

The ground of demurrer that the count charged perjury on the oath taken before Dossey, a notary public and ex officio justice of

the peace, seems equally untenable. By Act Aug. 15, 1876, c. 304, 19 Stat. 206 [U. S. Comp. St. 1901, p. 662], it was provided that:

"Notaries public of the several states, territories and the District of Columbia be and they are hereby authorized to take depositions and do all other acts in relation to taking testimony to be used in the courts of the United States, to take acknowledgments and affidavits, in the same manner and with the same effect as commissioners of the United States Circuit Court may now lawfully take or do."

It will not be contended, we presume, that it would be incompetent for a commissioner of the Circuit Court to take the oath by which the surety upon a distiller's bond attempts justification. The United States commissioner has general jurisdiction to administer oaths. This is an especial function of that officer, and is equally enjoyed by the clerks and deputy clerks of the United States. See Act May 28, 1896, c. 252, 29 Stat. 184 [U. S. Comp. St. 1901, pp. 499, 500]. It is obvious that, since a commissioner can administer the oath on which perjury is assigned here, a notary public of the state may do so. Nor does it impair this function on his part that, in addition to his public notarial distinctions, he enjoys the ex officio honor of a justice of the peace. As notary public he administers oaths, as justice of the peace he dispels "the gladsome light of jurisprudence."

For these reasons the court feels constrained to overrule the demurrer.