### UNITED STATES v. SMITH.

No. 22206.

United States District Court
S. D. California, Central Division.

July 3, 1952.

Walter S. Binns, U. S. Atty., Ray H. Kinnison, Asst. U. S. Atty., Chief Criminal Division, George M. Treister, Asst. U. S. Atty., Los Angeles, Cal., for Government.

Henry C. Huntington, Los Angeles, Cal., for defendant.

YANKWICH, Chief Judge.

On February 27, 1952, the defendant, Edgar Lee Smith, was indicted by the Grand Jury of this District for evasion of occupational tax. Count one charges that in the month of November 1951, the defendant engaged in the business of accepting wagers on horse races and became liable to the payment, on or before November 30, 1951, of the occupational tax imposed by Section 3290 of the United States Internal Revenue Code.[1] The indictment also recites that the defendant willfully and knowingly failed to pay the tax to the Collector of Internal Revenue for the Sixth Internal Revenue District, in violation of law.[2] Count two

1. 26 U.S.C.A. § 3290.

2. 26 U.S.C.A. § 2707(b) as made applicable by 26 U.S.C.A. § 3294(c).

alleges his failure to register as required by law.[3]

Section 3290 levies a tax of Fifty ($50.-00) Dollars per year to be paid by each person who is engaged in wagering. Section 3291 decrees that each person required to pay such tax shall register with the Collector: (1) his name and place of residence; (2) each place of business where the activity is carried on and the names and places of residence of persons engaged in receiving wagers for him or on his behalf; and (3) the name and place of residence of each person for whom he is receiving wagers.

By Section 3294(c),[4] the penalties prescribed by Section 2707 are made applicable to willful violations of the provisions relating to the occupational tax for wagering. The penalty under the portion of the section under which the indictment is drawn is a fine of not more than $10,000.00 or imprisonment of not more than one year, or both, together with the costs of prosecution.[5]

The offense is denominated a misdemeanor. The defendant has moved to dismiss the indictment upon the ground that the statute is unconstitutional in violation of the provisions of the Tenth and Fourteenth Amendments to the Constitution.

## I

### The Power To Tax

We do not see the relevancy to the inquiry of the Fourteenth Amendment, which is a limitation of the powers of the States. The reference in the Defendant's memorandum to an opinion, as yet not published, United States v. Kahriger, No.

16672, dated May 6, 1952, by Judge George A. Welsh of the Eastern District of Pennsylvania, warrants the conclusion that the chief reliance is upon the ground stated in that decision, namely, invasion of states' rights in violation of the guaranty of the Tenth Amendment to the constitution of the United States.

The doctrine of states' rights has been a political rather than a juridical problem. The War between the States was fought in order to repudiate the extreme of the doctrine which postulated the right of a state to secede from the Union. With the development of greater controls by the Federal Government in recent decades, the doctrine of states' rights has been seized upon by the opponents of such controls as a ground for their opposition. And the provisions of the Tenth Amendment to the Constitution have been repeatedly called into play to assert interference with the police powers of the states.

We need not concern ourselves with the rights or wrongs of the general problem which has colored many of the political arguments in the last few decades. For, regardless of one's predilection for federalism or staterightism, the fact remains that in those domains in which the Federal Government is supreme, its acts are valid even though they affect or are intended to affect purely local activities. Thus, in the exercise of the right to regulate commerce between the states [6], it has been long the accepted doctrine that the Congress may regulate matters of local concern.[7] Again, the Constitution grants the Congress the power to "lay and collect" taxes and

3. 26 U.S.C.A. § 3291(a).

4. 26 U.S.C.A. § 3294(c).

5. 26 U.S.C.A. § 2707(b).

6. Constitution, art. I, sec. 8, cl. 3.

7. United States v. Darby, 1941, 312 U.S. 100, 114–115, 657, 61 S.Ct. 451, 85 L.Ed. 609; American Light & Power Co. v. Securities & Exchange Commission, 1946, 329 U.S. 90, 99–100, 67 S.Ct. 133, 91 L.Ed. 103; Polish Nat. Alliance v. National Labor Relations Board, 1944, 322 U.S. 643, 649–651, 64 S.Ct. 1196, 88 L.Ed. 1509. For a long list of cases dealing with the broad scope of the exercise

of the power to regulate commerce between the states, see the writer's opinion in George v. United States, 1952, 9 Cir., 196 F.2d 445, 450.

"In short, Congress is *completely uninhibited* by the commerce clause in selecting the means considered necessary for bringing about the desired conditions in the channels of interstate commerce. Any limitations are to be found in other sections of the Constitution." American Light & Power Co. v. Securities & Exchange Commission, supra, 329 U.S. at page 100, 67 S.Ct. at page 140. (Emphasis added.)

excises.[8] It is no objection to the exercise of the power to tax that by so doing, the Congress may affect local trades or activities by imposing a tax or a license fee, without the payment of which they cannot be carried on.[9]

The Supreme Court in a leading case [10], has stated the object of federal licensing provisions in this manner:

"They simply express the purpose of the government not to interfere by penal proceedings with the trade nominally licensed, if the required taxes are paid. The power to tax is not questioned, nor the power to impose penalties for non-payment of taxes."[11]

And, consistently, *with some deviation to be noted later,* the courts have held that if the tax be of this character, it matters not that some other objects are sought to be attained. Thus, in sustaining the conspiracy clauses of the Harrison Narcotics Act [12], Mr. Justice Oliver Wendell Holmes stated:

"It may be assumed that the statute has a moral end as well as revenue in view, but we are of opinion that the district court, in treating those ends as to be reached only through a revenue measure, and within the limits of a revenue measure, was right." [13]

Later, the same court in passing on the licensing sections of the act, said:

*"The act may not be declared unconstitutional because its effect may be to accomplish another purpose as well as the raising of revenue. If the legislation is within the taxing authority of Congress—that is sufficient to sustain it."*[14] (Emphasis added.)

Clearly, the penalties of the Harrison Narcotics Act, which have since been increased [15], would warrant the inference that what the Congress was seeking to do *was* not so much to *license those selling narcotics,* but to *discourage and prohibit their sale.* And yet, the power was sustained. The ruling is in line with other cases which sought to achieve diverse purposes through Federal taxation. Thus, we have the instance in which the Federal

---

8. Constitution, Article I, Sec. 8, cl. 1.

9. License Tax Cases, 1866, 5 Wall. 462, 18 L.Ed. 497; Veazie Bank v. Fenno, 1869, 8 Wall. 533, 19 L.Ed. 482; Sonzinsky v. United States, 1937, 300 U.S. 506, 57 S.Ct. 554, 81 L.Ed. 772; Sunshine Anthracite Coal Co. v. Adkins, 1940, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263.

> "Enactments levying taxes made in pursuance of the Constitution are, as other laws are, 'the supreme Law of the Land.' Art. VI, Constitution of the United States; Flint v. Stone Tracy Co., 220 U.S. 107, 108, 153, 31 S.Ct. 342, 350, 55 L. Ed. 389. The first of the powers conferred upon Congress is the power 'To lay and collect Taxes, Duties, Imposts and Excises * * *' Art. I, § 8. By its terms the Constitution has placed only one limitation upon this power, other than limitations upon methods of laying taxes not here relevant: Congress can lay no tax 'on Articles exported from any State.' Art. I, § 9. Barring only exports, the power of Congress to tax 'reaches every subject.' License Tax Cases. 5 Wall. 462, 471, 18 L.Ed. 497." New York v. United States, 1946,

326 U.S. 572, 575, 66 S.Ct. 310, 311, 90 L.Ed. 326.

10. See, License Tax Cases, supra, note 9.

11. See, License Tax Cases, supra, 5 Wall. at page 471.

12. 38 Stat. 785, 789. (Now, Sec. 3220 et seq. of Title 26.)

13. United States v. Jin Fuey Moy, 1916, 241 U.S. 394, 402, 36 S.Ct. 658, 659, 60 L.Ed. 1061.

14. United States v. Doremus, 1919, 249 U.S. 86, 94, 39 S.Ct. 214, 216, 63 L.Ed. 493. See, Webb v. United States, 1919, 249 U.S. 96, 39 S.Ct. 217, 63 L.Ed. 497; United States v. Wong Sing, 1922, 260 U. S. 18, 21, 43 S.Ct. 7, 67 L.Ed. 105; Watson v. United States, 1926, 9 Cir., 16 F.2d 52, 53. In a later case, the Supreme Court said emphatically:

> "Congress may impose penalties in aid of the exercise of any of its enumerated powers. The power of taxation, granted to Congress by the Constitution, may be utilized as a sanction for the exercise of another power which is granted it." Sunshine Anthracite Coal Co. v. Adkins, 1940, 310 U.S. 381, 393, 60 S.Ct. 907, 912, 84 L.Ed. 1263.

15. 21 U.S.C.A. § 174.

Government placed a heavy tax on state bank issues of circulating notes.[16] The taxing power was used to discourage the manufacture and sale of oleomargarine.[17] A federal tax on state corporations was sustained.[18] And, one of the latest declarations on the subject comes from a decision by a unanimous court in which it is stated:

"But a judiciary must judge by results, not by the varied factors which may have determined legislators' votes. We cannot undertake a search for motive in testing constitutionality. See Hammer v. Dagenhart, 247 U.S. 251, 38 S.Ct. 529, 62 L.Ed. 1101, overruled in United States v. Darby, 312 U.S. 100, 657, 61 S.Ct. 451, 85 L.Ed. 609. Compare Bailey v. Drexel Furniture Co., 259 U.S. 20, 42 S.Ct. 449, 66 L.Ed. 817, and United States v. Constantine, 296 U.S. 287, 56 S.Ct. 223, 80 L.Ed. 233, with Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 393, 60 S.Ct. 907, 912, 84 L.Ed. 1263. Compare United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, with Steward Machine Co. v. Davis, 301 U.S. 548, 592, 57 S.Ct. 883, 893, 81 L.Ed. 1279, and Cincinnati Soap Co. v. United States, 301 U.S. 308, 57 S.Ct. 764, 81 L.Ed. 1122." [19]

While the language was used in a case involving an attack on state legislation, almost identical language has been used in conjunction with the exercise of the federal taxing power. We quote:

*"The thesis of the opinion that the motive of the prohibition or its effect to control in some measure the use or production within the states of the article thus excluded from the commerce can operate to deprive the regulation of its constitutional authority has long since ceased to have force."*[20] (Emphasis added.)

II

Results Incidental To Taxation

The two quotations just given are of utmost significance because they indicate that cases such as Hammer v. Dagenhart and others [21], in which a contrary doctrine has been promulgated, have been overruled either directly or by implication. Indeed, the Supreme Court in the passage just quoted from Daniel v. Family Insurance Co. contrasts not only Hammer v. Dagenhart [22] with United States v. Darby [23], which overruled it directly, but also United States v. Constantine [24], *on which Judge Welsh's opinion is chiefly based,* with Sunshine Anthracite Coal Co. v. Adkins [25], which postulates a *different approach.* We believe that whatever force the Constantine case has is gone, and that it is no longer binding authority on this court.[26]

In the light of the principles just declared, there is no infirmity in the tax under

16. Veazie Bank v. Fenno, supra, note 9.

17. 24 Stat. 209; 32 Stat. 93; McCray v. United States, 1904, 195 U.S. 27, 24 S.Ct. 769, 49 L.Ed. 78; Carolene Products Co. v. United States, 1944, 323 U.S. 18, 23–24, 65 S.Ct. 1, 89 L.Ed. 15.

18. 36 Stat. c. 6, 11; Flint v. Stone Tracy Co., 1911, 220 U.S. 107, 152–156, 31 S.Ct. 342, 55 L.Ed. 389.

19. Daniel v. Family Insurance Co., 1949, 336 U.S. 220, 224, 69 S.Ct. 550, 552, 93 L.Ed. 632.

20. United States v. Darby, 1941, 312 U.S. 100, 116, 61 S.Ct. 451, 458, 84 L.Ed. 609.

21. Hammer v. Dagenhart, 1918, 247 U.S. 251, 38 S.Ct. 529, 62 L.Ed. 1101; United States v. Constantine, 1935, 296 U.S. 287, 56 S.Ct. 223, 80 L.Ed. 233.

22. Hammer v. Dagenhart, supra, note 21.

23. United States v. Darby, supra, note 20. See additional cases cited in notes 7 and 14.

24. United States v. Constantine, supra, note 21.

25. Sunshine Anthracite Coal Co. v. Adkins, supra, note 14.

26. The following quotation from the unanimous opinion in United States v. Sanchez, 1950, 340 U.S. 42, 71 S.Ct. 108, 110, 95 L.Ed. 47, indicates clearly that the principles declared by Mr. Justice Cardozo in the dissent just cited represents the present unanimous opinion of the Court:

"It is beyond serious question that a tax does not cease to be valid merely because it regulates, discourages, or even definitely deters the activities taxed.

attack. The tax was enacted after the extensive hearings of the Kefauver committee showed the nefarious activities of some of the persons engaged in wagering. If the Congress, by taxing the activity sought to discourage it, it acted within its constitutional powers. For, as amply appears, the Congress may use the power to tax in order to bear more heavily on certain activities as it has done in taxing state bank issues of circulating notes, dealings in narcotics, firearms and even the sale of harmless oleomargarine.

The wise words of Mr. Justice Cardozo's dissent in United States v. Constantine, *represent correctly the law as it is today:*

"Congress may have held the view that an excise should be so distributed as to work a minimum of hardship; that an illegal and furtive business, irrespective of the wrongdoing of its proprietor, is a breeder of crimes and a refuge of criminals; and that in any wisely ordered polity, in any sound system of taxation, men engaged in such a calling will be made to contribute more heavily to the necessities of the Treasury than men engaged in a calling that is beneficent and lawful.

"Thus viewed the statute was not adopted to supplement or sanction the police powers of the states or of their political subdivisions. It was adopted for anything disclosed upon its face or otherwise, as an appropriate instrument of the fiscal policy of the nation. The business of trading in things contraband is not the same as the business of trading in legitimate articles of commerce. Classification by Congress according to the nature of the calling affected by a tax (State Board of Tax Commissioners v. Jackson, 283 U.S. 527, 51 S.Ct. 540, 75 L.Ed. 1248) does not cease to be permissible because the line of division between callings to be favored and those to be reproved corresponds with a division between innocence and criminality under the statutes of a state. Power is not abused because the shock of its impact is equitably distributed. The practice of medicine by an unlicensed charlatan may be taxed on a different basis from its practice by a licensed physician, irrespective of the fact that the charlatan is guilty of a crime. The practice of law by a disbarred lawyer may be taxed on a different basis from the practice of the same profession by a lawyer in good standing. With as much if not greater reason a like distinction may be drawn between the licensed and the unlicensed traffic in intoxicating liquors. The underlying principle in all these cases is as clear as it is just."[27]

This is a sound constitutional doctrine, which we prefer to follow.[28]

The motion to dismiss is denied.

Sonzinsky v. United States, 1937, 300 U.S. 506, 513–514, 57 S.Ct. 554, 555–556, 81 L.Ed. 772. The principle applies even though the revenue obtained is obviously negligible, Sonzinsky v. United States, supra, or the revenue purpose of the tax may be secondary, Hampton & Co. v. United States, 1928, 276 U.S. 394, 48 S.Ct. 348, 72 L.Ed. 624. Nor does a tax statute necessarily fall because it touches on activities which Congress might not otherwise regulate. As was pointed out in Magnano Co. v. Hamilton, 1934, 292 U.S. 40, 47, 54 S. Ct. 599, 603, 78 L.Ed. 1109:

" 'From the beginning of our government, the courts have sustained taxes although imposed with the collateral intent of effecting ulterior ends which, considered apart, were beyond the constitutional power of the lawmakers to realize by legislation directly addressed to their accomplishment.'

"These principles are controlling here. The tax in question is a legitimate exercise of the taxing power despite its collateral regulatory purpose and effect."

The Court there, was dealing with a tax on marijuana so high that it could readily have been argued that the object was not revenue but discouragement of the traffic. Nevertheless, it concluded that this fact did not stand in the way of validity of the tax.

27. United States v. Constantine, supra, note 21, 296 U.S. at pages 297–298, 56 S.Ct. 223, 228, 80 L.Ed. 233. And see, quotation from United States v. Sancliez, supra, note 26.

28. See, State Board of Tax Commissioners v. Jackson, 1931, 283 U.S. 527, 51 S.Ct. 540, 75 L.Ed. 1248.