**UNITED STATES of America, Appellee,**

v.

**Peter SAHADI et al., Appellants.**

Nos. 632, 647, 691, 681, 784, 783, 952, 953, Dockets 76-1474, 76-1480, 76-1493, 76-1500, 76-1514, 76-1516, 76-1547, 76-1525.

United States Court of Appeals, Second Circuit.

Argued Feb. 23, 1977.

Decided April 29, 1977.

Hubert J. Santos, Hartford, Conn., for appellant Sahadi.

Charlotte Anne Perretta, Boston, Mass. (Keating & Perretta, Boston, Mass., of counsel), for appellant Le Conche.

Thomas D. Clifford, Hartford, Conn. (Peter W. Benner, Hartford, Conn., of counsel), for appellant Ferrigno.

Michael J. Graham, Hartford, Conn., for appellant Lupo.

Richard S. Cramer, Asst. Federal Public Defender, Hartford, Conn., for appellant Jean.

Mark S. Steier, West Hartford, Conn. (Steier & Nerenberg, West Hartford, of counsel), for appellant Quealy.

Paul E. Coffey, Hartford, Conn. (Peter C. Dorsey, U. S. Atty., D. Conn., New Haven, of counsel), for appellee.

Before MANSFIELD and VAN GRAAFEILAND, Circuit Judges, and CARTER, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

This is a consolidated appeal from the United States District Court for the District of Connecticut by eight defendants who entered pleas of guilty or of nolo contendere to charges of violating the federal wagering tax laws, 26 U.S.C. § 4401, *et seq.* Prior to plea, appellants moved to dismiss the indictments on the ground that the dis-

* Of the Southern District of New York, sitting by designation.

closure and reporting requirements of the wagering tax statutes violated their Fifth Amendment privilege against self-incrimination. The District Court denied the motions but approved a stipulation permitting this constitutional challenge to be pursued on appeal. We hold that the provisions of the statutes in question do not violate the Fifth Amendment privilege against self-incrimination, and we affirm the judgments entered below.

In order to bring the issue presented here into proper focus, a brief review of the legislative and judicial history of the federal wagering tax laws is required. These laws impose special tax, record keeping and reporting obligations on persons engaged in the business of accepting illegal wagers (bookmakers). Section 4401 provides that an excise tax must be paid on all gross wagers accepted, and § 4403 requires the bookmaker to keep daily records detailing his volume of business. In addition, § 4411 imposes a special occupational tax on all bookmakers, and § 4412 requires each person liable for the occupational tax to file a registration form with the district Internal Revenue Service director showing, among other things, his name, place of residence, the names of his employees and all addresses where his wagering business is being carried on. When the bookmaker has registered and paid the occupational tax, he is issued a special stamp.

Prior to 1968, it was also mandated that publicity would attend compliance with these statutory provisions. Section 6806(c) required each § 4412 registrant to display his special tax stamp conspicuously at his place of business or to carry it on his person if he had no place of business and exhibit it upon request of Treasury Department personnel; and § 6107 required each district IRS office to keep a public record of those who had paid the special occupational tax and, upon request, to furnish prosecuting officers with certified copies thereof.

In 1968, in the companion cases of *Marchetti v. United States,* 390 U.S 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), the Supreme Court held that the wagering tax provisions, as they then existed, violated the defendants' Fifth Amendment privilege against self-incrimination. *Marchetti* dealt specifically with the special occupational tax provisions. Although the Court reaffirmed the power of Congress to tax unlawful activities, *see License Tax Cases,* 72 U.S. (5 Wall.) 462, 18 L.Ed. 497 (1866); *United States v. Sanchez,* 340 U.S. 42, 71 S.Ct. 108, 95 L.Ed. 47 (1950), it found three factors in the then existing scheme giving rise to "real and appreciable" hazards of self-incrimination. First, § 6107 required the IRS to furnish prosecuting officers with the names of those who had paid the occupational tax. Second, § 6806(c) required the taxpayers to display the revenue stamp or to carry it on their persons and to produce it on the demand of Treasury officers. Third, the Court took notice that the IRS was making available to law enforcement agencies the names of those who had paid the wagering tax and was in "full cooperation" with the efforts of the United States Attorney General to suppress organized gambling. Recognizing that only those inherently suspect of criminal activities were required to register and pay the special occupation tax, the Court felt that the foregoing requirements and practices created "real and appreciable" and not merely "imaginary and unsubstantial" hazards of self-incrimination.

*Grosso v. United States, supra,* dealt with the excise tax imposed by § 4411. Before payment of the excise tax is accepted, the regulations promulgated under 26 U.S.C. § 6001 require the bookmaker to file a monthly return (Internal Revenue Service Form 730), disclosing details of his wagering operations for the relevant month, 26 CFR § 44.6011(a)–1. The Court pointed out that, although the IRS was not required by statute to provide prosecutors with the names of those who had paid this tax, neither was there any statutory restriction upon the use of the information obtained through imposition of the tax. Moreover, it affirmatively appeared that the IRS was making this information available to prosecuting authorities. The Court held that the

defendant might reasonably expect that the information which he was required to furnish would be provided to prosecuting authorities and that this constituted a "real and appreciable" hazard of self-incrimination.

It was suggested to the Court in both *Marchetti* and *Grosso* that the Court itself might impose restrictions upon the use by federal and state authorities of the information furnished the IRS under the statutes in question so as to shield taxpayers against compulsory self-incrimination. Recognizing that the privilege against self-incrimination may not be asserted "if other protection is granted which 'is so broad as to have the same extent in scope and effect' as the privilege itself", *Marchetti*, 390 U.S. at 58, 88 S.Ct. at 708, the Court felt nonetheless that the grant of such protection was properly the prerogative of Congress. Taking its cue from the language above quoted, Congress made several significant statutory changes. Section 6806(c) was amended by deleting the requirement that § 4412 registrants conspicuously display their tax stamp or produce it upon demand. Section 6107 was repealed so that local IRS offices were no longer required to provide wagering tax information to local law enforcement agencies. Finally, Congress en-

acted § 4424 [1] which contains specific restrictions upon the disclosure and use of wagering tax information.

Of primary significance in protecting those compelled by the wagering tax laws to divulge incriminatory information are the provisions of § 4424. Subsection (a) contains a broad general prohibition against Treasury Department disclosure of the taxpayer's return, payment, registration or pertinent records and of information obtained by exploitation of compelled reporting. Subsection (c) covers items possessed by the wagering taxpayer in connection with his compliance with the wagering tax laws and forbids their use against him in a criminal proceeding except to enforce the wagering tax provisions.

The exceptions to the subsection (a) general rule prohibiting disclosure are contained in subsections (b) and (d). Subsection (b) permits disclosure of wagering tax information for use solely in connection with civil or criminal enforcement of the wagering tax laws but grants complete immunity from the use of such documents in prosecutions for pre-1974 offenses. Finally, subsection (d) permits wagering tax information to be submitted to specified congres-

---

1. § 4424. Disclosure of wagering tax information

(a) General rule.—Except as otherwise provided in this section, neither the Secretary or his delegate nor any other officer or employee of the Treasury Department may divulge or make known in any manner whatever to any person—

(1) any original, copy, or abstract of any return, payment, or registration made pursuant to this chapter,

(2) any record required for making any such return, payment, or registration, which the Secretary or his delegate is permitted by the taxpayer to examine or which is produced pursuant to section 7602, or

(3) any information come at by the exploitation of any such return, payment, registration, or record.

(b) *Permissible disclosure.*—A disclosure otherwise prohibited by subsection (a) may be made in connection with the administration or civil or criminal enforcement of any tax imposed by this title. However, any document or information so disclosed may not be—

(1) divulged or made known in any manner whatever by any officer or employee of the United States to any person except in connection with the administration or civil or criminal enforcement of this title, nor

(2) used, directly or indirectly, in any criminal prosecution for any offense occurring before the date of enactment of this section.

(c) *Use of documents possessed by taxpayer.*—Except in connection with the administration or civil or criminal enforcement of any tax imposed by this title—

(1) any stamp denoting payment of the special tax under this chapter,

(2) any original, copy, or abstract possessed by a taxpayer of any return, payment, or registration made by such taxpayer pursuant to this chapter, and

(3) any information come at by the exploitation of any such document,

shall not be used against such taxpayer in any criminal proceeding.

(d) *Inspection by Committees of Congress.*—Section 6103(d) shall apply with respect to any return, payment, or registration made pursuant to this chapter.

sional committees charged with fiscal responsibilities.

Appellants contend that the revised statutory scheme remains in contravention of the Fifth Amendment and is insufficient to overcome the *Marchetti-Grosso* objections. Relying upon *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), they argue that only use and derivative use immunity is sufficient to compel disclosure in the face of an assertion of the privilege against self-incrimination. In *Kastigar*, the Court held that use and derivative use immunity sufficed to compel testimony over a claim of privilege and that full transactional immunity from prosecution was not required. 406 U.S. at 453, 92 S.Ct. 1653. The Court did not hold, however, that the grant of use and derivative use immunity was the sole means of compelling the disclosure of incriminating information.[2] The focus of inquiry when information is sought over a claim of privilege is whether the hazards of self-incrimination are "real and appreciable" as opposed to "trifling or insubstantial". *See, e. g., Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 478, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972); *Hoffman v. United States*, 341 U.S. 479, 486–87, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); *Mason v. United States*, 244 U.S. 362, 37 S.Ct. 621, 61 L.Ed. 1198 (1917); *Heike v. United States*, 227 U.S. 131, 144, 33 S.Ct. 226, 57 L.Ed. 450 (1913); *Brown v. Walker*, 161 U.S. 591, 599, 16 S.Ct. 644, 40 L.Ed. 819 (1896). These hazards may be reduced to trifles where the information furnished is made unavailable to law enforcement authorities. *United States v. Freed*, 401 U.S. 601, 606, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971).

Appellants argue, however, that "real and appreciable" hazards of self-incrimination remain despite the disclosure prohibitions of § 4424. This danger arises, according to appellants, from subsection (b)(1) which does not prohibit a Justice Department official, in possession of wagering tax information for use in wagering tax litigation, from himself using the information in prosecuting under another statute. Appellants further see a "real and appreciable" danger resulting from the absence of IRS regulations to distinguish specious from valid Justice Department requests for information and from the absence of provisions punishing Treasury Department officials who illegally disclose information. Finally, appellants apprehend danger from subsection (d) and § 6103(d), which allow wagering tax information to be submitted to select committees of Congress sitting in executive session. Because information in possession of these select committees can be transmitted to members of either house of Congress, appellants conjecture that a Congressman receiving wagering tax information might turn it over to a prosecuting official.[3]

We do not believe that Congressional intent must be denied because of speculations such as these. Constitutional protection is confined to real danger and does not extend to speculative possibilities outside the ordinary operation of the law, *Heike v. United States, supra,* 227 U.S. at 144, 33 S.Ct. 226; *Brown v. Walker, supra,* 161 U.S. at 599, 16 S.Ct. 644; the use of wagering tax information in the manners suggested by appellants would substantially deviate from the ordi-

---

**2.** Appellants also place heavy emphasis upon *United States v. Freed*, 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), contending that it also mandates a statutory barrier against the use of compelled information in a prosecution. However, as in *Kastigar*, the Court held that such a statutory scheme satisfies Fifth Amendment requirements; it did not hold it to be the exclusive means of making the hazards of self-incrimination "trifling or insubstantial": Indeed, equally significant to the Court in *Freed* was the "unavailability of the registration data, as a matter of administration, to local, state,

and other federal agencies." *Id.* at 606, 91 S.Ct. at 1117.

**3.** Appellant Quealy also contends that § 4424 is inadequate because it prohibits disclosure to "persons" and the definition of "person" contained in § 7701 does not include a state or an agency thereof. The clear intent of § 4424 is to restrict the disclosure of wagering tax information except as described therein. The prohibition against unauthorized disclosure "to any person" is broad enough to encompass persons who are employees of agencies or states.

nary operation of the law. " '[I]t would be to convert a salutary protection into a means of abuse if it were to be held that a mere imaginary possibility of danger, however remote and improbable, was sufficient to justify the withholding of [information] essential to the ends of justice'." *Brown v. Walker, supra,* 161 U.S. at 600, 16 S.Ct. at 648 quoting *Queen v. Boyes,* 1 B & S 311, 321 (Q.B. 1861).

When *Marchetti* and *Grosso* were decided, there existed both a statutory mandate and a Treasury Department practice to provide wagering tax information for nonwagering tax prosecutions. By contrast, there has been no demonstration of a single instance where this information has been so disclosed under the revised scheme. Unlike *Marchetti* where "[t]he terms of the wagering tax system [made it] quite plain that Congress intended information obtained as a consequence of [compliance with the wagering tax laws] to be provided to interested prosecuting authorities", 390 U.S. at 58–59, 88 S.Ct. at 708, the revised scheme clearly evinces a contrary Congressional intent. Appellants' assertion that criminal penalties do not exist to enforce the § 4424 restrictions overlooks the clear prohibitions of 18 U.S.C. § 1905 which provides for fines and/or imprisonment, and loss of employment for persons making unauthorized disclosure of confidential government information.

The 1974 revisions of the federal wagering tax laws and the concomitant change in Treasury Department practices have eliminated the "real and appreciable" hazards of self-incrimination that existed under the prior law. Accordingly, the judgments entered in the District Court are affirmed.