**In the Matter of UNIVERSAL LUNCHES, INC., Bankrupt.**

**Bankruptcy No. 78 B 1387.**

United States Bankruptcy Court, E. D. New York.

Dec. 13, 1979.

Alan M. Rubin, New York City, for bankrupt.

Finkel, Goldstein & Berzow, New York City, by Benjamin Finkel, New York City, for trustee.

## DECISION AND ORDER ON APPLICATION OF TRUSTEE TO HOLD RICHARD JEDWAB IN CONTEMPT OF COURT, ETC.

### PRELIMINARY STATEMENT

JOSEPH V. COSTA, Bankruptcy Judge.

This Court is presented with the issue as to whether a person designated to file schedules and statement of affairs, as required under the Bankruptcy Act, may refuse to do so on the ground of self-incrimination, based upon a personal fear of self-incrimination without proof of a real and substantial hazard of self-incrimination.

An involuntary petition in bankruptcy was filed against the bankrupt, Universal Lunches, Inc. (Universal) on June 12, 1978. Upon consent, Universal was adjudicated a bankrupt, and a trustee was appointed. At the first meeting of creditors, Richard Jedwab, (Jedwab) President of Universal, refused to testify on the basis of his Fifth Amendment privilege against self-incrimination. After a hearing this Court designated Jedwab as the person to file schedules and statement of affairs and an order to that effect was entered on March 19, 1979. Jedwab refused to comply with the Court's order. The trustee determined that he would attempt to procure verified schedules and statement of affairs before pursuing any action he may have against Jedwab with respect to his refusal to testify at the first meeting of creditors.

The Trustee brought on an order to show cause why Jedwab should not be held in contempt for failure to comply with this Court's order designating him as the person to file same. Jedwab's attorney in that proceeding filed an affidavit in opposition alleging that Jedwab refused to file the schedules and statement of affairs on the basis of his Fifth Amendment privilege. The affidavit urged that Jedwab feared that he was one of the targets of the U.S. Attorney's investigation into the federal lunch program in which Universal was a participant. Additionally, Jedwab contended that he could not comply with the Court's order because the U.S. Attorney had subpoenaed Universal's books and records. This Court made and filed an Order directing the U.S. Attorney to make available to Jedwab the books and records for the purpose of preparing, executing and filing schedules and statement of affairs. However, Jedwab continued to refuse to comply with the Court's order on Fifth Amendment grounds.

A hearing was held on November 1, 1979 at which time this Court requested that Jedwab, who was present in the courtroom, testify to the facts upon which he based his fear of self-incrimination so that the Judge could determine whether his alleged fear of self-incrimination was real and not imagi-

nary. Jedwab, continuing his stance of personal silence, through his attorney, refused to give any testimony to enlighten the Court on the basis for his claim of self-incrimination.

Decision was reserved and the parties given time to submit their respective memoranda of law which was done.

## MEMORANDUM OF LAW

Section 7(a)(8) of the Bankruptcy Act requires a bankrupt to file with the Court, signed and verified schedules of his property and statement of affairs. Jedwab, the person designated by the Court to file the schedules and statement of affairs, has refused to do so on the ground of self-incrimination. His attorney has stated that his client's assertion of his Fifth Amendment privilege is based upon the fact that the U.S. Attorney is currently investigating the federal summer lunch program in which Jedwab's company, Universal Lunches, Inc., was a participant and has subpoenaed its books and records. Jedwab, though given the opportunity to do so, has not furnished the court with any information or evidence as to the reasons why he fears self-incrimination if he is compelled to file the schedules and statement of affairs.

■ The Bankruptcy Act § 7(a)(10) provides immunity from criminal prosecution for *testimony* or any evidence directly or indirectly derived from such *testimony* given during an examination of the bankrupt under § 7(a)(10). (Emphasis Supplied) Immunity, however, only extends to oral evidence and not to schedules and statement of affairs. *Ensign v. Pennsylvania*, 227 U.S. 592, 33 S.Ct. 321, 57 L.Ed. 658 (1912).

The fact that the Supreme Court has interpreted § 7(a)(10) as excluding schedules and statement of affairs from immunity does not relieve the bankrupt of his duty to file them by a blanket assertion of his Fifth Amendment privilege. As the Supreme Court stated in *U. S. v. Sullivan*, 274 U.S. 259, 263, 47 S.Ct. 607, 607, 71 L.Ed. 1037 (1927), a case concerning a taxpayer's duty to file an income tax return, "[i]f the form or return provided called for answers

that the defendant was privileged from making he could have raised the objection in the return, but could not on that account refuse to make any return at all."

More recently, and closer to the issue sub-jud, the Third Circuit in *In re Hoffman Can Corp.*, 373 F.2d 622 (3d Cir. 1967) applied the *Sullivan* rule and rejected a similar effort by a bankrupt to assert a blanket refusal to file a statement of affairs and supporting schedules on the ground of self-incrimination. The court stated that "absent special circumstances not yet revealed, it appears that many of the numerous items of information required by the schedules could not possibly be incriminating no matter how broadly the privilege is construed." Additionally, the required information has an important regulatory function and is of general applicability. *U. S. v. Falcone*, 544 F.2d 607 (2d Cir. 1976) and *Johnson v. U. S.*, 228 U.S. 457, 33 S.Ct. 573, 57 L.Ed. 919 (1913). See also *California v. Byers*, 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971) in which the Supreme Court held that a noncriminal regulatory statute where self-incrimination is indispensable and not aimed at a "highly selective group inherently suspect of criminal activities" where the possibility of self-incrimination is not substantial does not infringe upon the Fifth Amendment privilege.

The Supreme Court distinguished *Marchetti v. U. S.*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and *Grosso v. U. S.*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) where the Court permitted complete nondisclosure with respect to gambling tax and registration requirements on the fact that compliance would entail "substantial hazards of self-incrimination" because the disclosures were only extracted from a "highly selective group inherently suspect of criminal activities" and the area was permeated with criminal statutes. *California v. Byers*, 402 U.S., at 430, 91 S.Ct., at 1539.

■ The Fifth Amendment, however, does not relieve the bankrupt from answering solely on the basis of his own judgment that the information would incriminate

him. *In re Arend*, 286 F. 516, 518 (2d Cir. 1922) and *Mason v. U. S.*, 244 U.S. 362, 37 S.Ct. 621, 61 L.Ed. 1198 (1917). The availability of the privilege is in the first instance for the Judge to determine, since he is the closest to the evidence. *Hoffman v. U. S.*, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed.2d 1118 (1951) and *In re U. S. Hoffman Can Corp.*, 373 F.2d 622, 628 (3d Cir. 1967). The determination is to be made by the trial court in the exercise of its sound discretion; and unless there is a reasonable ground as distinct from a remote or speculative possibility, to apprehend that a direct answer may prove dangerous to the witness, his answer should be compelled. *In re Arend*, 286 F. 516, 518 (2d Cir. 1922). "The focus of inquiry when information is sought over a claim of privilege is whether the hazards of self-incrimination are 'real and appreciable' as opposed to 'trifling or insubstantial.' " *U. S. v. Sahadi*, 555 F.2d 23, 26 (2d Cir. 1977). The Judge must be presented with the facts and from which to determine whether the refusal is "based on merely fanciful grounds or upon some imaginary fear or arbitrary reason . . . ." *In re Arend, supra; Podolin v. Lesher Warner Dry Goods Co.*, 210 F. 97 (3d Cir. 1914). The invocation of the privilege must be in the Judge's presence so that he may consider, by his own personal perception of the peculiarities of the case the implication of the question in the setting in which it is asked. *In re U. S. Hoffman Can Corp.* at 628. See also *Hoffman v. U. S., supra.* If the claim of privilege is still asserted, some further showing of possible incrimination must be permitted before disposal of the claim. *In re U. S. Hoffman Can Corp.*, at 628. The claimant is only required to make a showing to the "limited extent requisite to make it known to a perceptive judgment that he has reached a risk of disclosure which should be avoided, lest in establishing his right to the constitutional safeguard he says enough to destroy it." *Id.* But the required showing must be made, here there is none. The Third Circuit in *In re U. S. Hoffman Can Corp., supra*, cited the Supreme Court's declaration in *Hoffman v. U. S., supra*, that an answer may be compelled only if it "clearly appears" to the court that the fear of incrimination is mistaken. The Supreme Court's declaration was made in the context of testimony in a proceeding before a federal grand jury which was investigating violations of federal criminal statutes. In light of the more recent Supreme Court decision in *California v. Byers*, 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971) dealing with self-reporting under a noncriminal regulatory statute (as is the Bankruptcy Act) where self-reporting was indispensable to its fulfillment, the applicability of *Hoffman v. U. S., supra*, to the bankruptcy area is questionable. The *Byers* Court clearly distinguished the availability of the Fifth Amendment privilege where there is "substantial hazard of self-incrimination" because the area is "permeated with criminal statutes" from "an essentially noncriminal and regulatory area of inquiry." *California v. Byers*, 402 U.S. at 430, 91 S.Ct. at 1539. Therefore, the standard set forth by the Second Circuit in *In re Arend, supra*, that there must be a "reasonable ground, as distinct from a remote or speculative possibility" for fearing self-incrimination with respect to the statement of affairs and schedules, may control.

On November 23, 1979, Jedwab's attorney submitted a reply memorandum of law concerning Jedwab's refusal to file a schedule and statement of affairs on Fifth Amendment grounds. The trustee asserts in his Memorandum of Law in support of his order to show cause that Jedwab may not completely refuse to file schedules and a statement of affairs on the basis of his Fifth Amendment privilege. Jedwab maintains that he may claim his Fifth Amendment privilege with respect to the filing of the schedules and statement of affairs because of the immunity accorded by the Bankruptcy Act does not extend to these requirements.

The Reply Memorandum sets forth Jedwab's position with respect to his assertion of the Fifth Amendment privilege against self-incrimination. It states that the criterion for evaluating a Fifth Amendment claim is that "as to each question, 'it

need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.'" *Hoffman v. U. S.*, 341 U.S. at 486, 71 S.Ct. at 818; *Daly v. U. S.*, 393 F.2d 873 at 878 (8th Cir.). This standard is not the criterion for the evaluation of a Fifth Amendment claim but rather the procedure the Judge is to employ to aid him in his determination as to whether "the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Marchetti v. U. S.*, 390 U.S. at 53, 88 S.Ct. at 705. The Supreme Court also stated in *Marchetti v. U. S., supra,* that a person is also privileged from furnishing information that would establish a "link in a chain" tending to establish guilt. However, the *Marchetti* case involved a gambling tax where every portion of the reporting requirement had a direct and unmistakable consequence of incriminating the petitioner. Respondent's memorandum states that "an answer to even an innocuous question if the setting suggests a substantial and real hazard of incrimination is not required" citing *Emspak v. U. S.*, 349 U.S. 190, 75 S.Ct. 687, 99 L.Ed. 997 (1955). The facts and setting in *Emspak* were very favorable to the petitioner. Emspak had been cited for contempt in his refusal to testify with respect to 58 out of a total of 239 questions concerning Communist affiliations before a Congressional committee. Less than two months prior to Emspak's appearance before the committee, eleven principal leaders of the U.S. Communist Party had been convicted under the Smith Act. At their trial, Emspak was identified as a Communist and associate of the defendants. Two weeks prior to Emspak's appearance, newspapers carried the story that the Justice Department within thirty days would take an important step toward the criminal prosecution of Emspak. In the present case, Jedwab cites the fact that the U.S. Attorney is investigating the federal lunch program of which his company, the bankrupt Universal Lunches, Inc., was a participant, that the

books and records of Universal Lunches were subpoenaed, that he was the president, a member of the board of directors, and shareholder of the bankrupt, that he was not granted immunity by the Government and that the applicable statutes of limitation have not run. Jedwab's attorney, by letter hereafter described, advised the court that three men, the President, Vice-President and Secretary Treasurer of Luigi Goldsteins, Inc., a meat supplier, have been indicted for fraud in connection with the federal lunch program. However, Jedwab has not presented the court with facts indicating that he is a target of the investigation. The facts must indicate to the Judge that the hazards of self-incrimination are "real and appreciable" as to each specific item on the schedules. As the Supreme Court stated in *U. S. v. Sullivan*, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927) a taxpayer may not refuse to file an income tax return at all, but rather, must assert his claim of privilege with respect to specific items. The Judge should then conduct a hearing to determine as to each question, in the setting in which asked, that a responsive answer may be dangerous. *Daly v. U. S.*, 393 F.2d 873 (8th Cir., 1968).

■ Respondent states that the trend of the courts has been to expand the Fifth Amendment privilege in civil proceedings citing *In re Master Key Litigation*, 507 F.2d 292, 293 (9th Cir. 1974); *U. S. v. Johnson*, 488 F.2d 1206, 1209, n.2 (1st Cir., 1972); *U. S. v. Miranti*, 253 F.2d 135, 139 (2d Cir. 1957) and *In re Folding Carton Antitrust Litigation*, 609 F.2d 867 (7th Cir., 1979).

An examination of these cases reveals that they are inapplicable to the issue presented in this case. *In re Master Key Litigation, supra,* involved the invocation of the Fifth Amendment privilege at an oral deposition by a sales manager and later vice-president of a company which was a defendant in an antitrust suit. In affirming the district court's refusal to compel the testimony of the witness, the Ninth Circuit noted the fact that the witness had been working for one or more of the corporate defendants up until the time of the deposi-

tion and arguably could have remained a part of the conspiracy at that time. The case at bar involves written schedules, not oral testimony and Jedwab's company, the bankrupt, has not been indicted or targeted in the investigation upon the facts presented to the court.

*U. S. v. Johnson, supra,* is not a civil case but rather a criminal case involving the interrogation of a former co-defendant by a defendant. The former co-defendant had already been convicted of the offense for which the defendant was charged and the court concluded that the danger of incrimination was not mistaken because the co-defendant remained open to a state or federal conspiracy charge for the offense for which he had been convicted.

*U. S. v. Miranti, supra,* was a case which arose from a federal grand jury investigation of alleged intimidation of witnesses. The defendants had been convicted of conspiracy to commit the crimes which were the subject of the grand jury investigation. The conviction was based on detailed statements to the FBI and former grand jury disclosing the conspiracy. The defendants refused to testify and acknowledge these statements at a subsequent grand jury investigation of another conspiracy involving related crimes and invoked their privilege because it was possible that they could be indicted for the related crimes based on the specific acknowledgements of their prior statements. *Miranti* is a criminal case involving oral testimony whereas the present case is civil involving no oral testimony.

Respondent cites a recent Seventh Circuit case, *In re Folding Carton Antitrust Litigation, supra,* in support of his claim that the Fifth Amendment privilege has been expanded in the civil area. An antitrust investigation by the Justice Department resulted in an indictment of 23 folding carton producers and 50 of their executives for a Sherman Act misdemeanor count charging a conspiracy to fix prices. R. Hayes Brown, the deponent in question, was president and chief operating officer of Container Corp. of America. Brown pleaded nolo contendere and was sentenced. The Justice Department filed a civil action for damages and Brown refused to testify at his deposition. The Seventh Circuit held that the district court erred in compelling Brown's testimony on the basis that there was not a likelihood of subsequent prosecution and stated that the applicable test is the "possibility of prosecution." The court said that, "if, in evaluating the assertion of a privilege, it is necessary to consider the probability of prosecution, . . . a judge's prediction as to the likelihood of subsequent prosecution is not dispositive in ascertaining the permissible scope of Fifth Amendment privilege. The Seventh Circuit found that the possibility of subsequent prosecution was not fanciful because the Justice Department, in a brief, had stated that a possibility of prosecution exists for testifying witnesses. *In re Folding Carton Antitrust Litigation* is a case involving oral testimony which arose out of a criminal prosecution in which the deponent was a defendant. In the case at bar, the court is presented with the assertion of the Fifth Amendment privilege with respect to the filing of schedules and statement of affairs as required by the Bankruptcy Act. An analogous area of the law is that involving income tax returns under the Internal Revenue Code. The Supreme Court has clearly stated that if a person has a Fifth Amendment privilege with respect to a specific item then he should raise it in the return but cannot refuse to file a return at all. *U. S. v. Sullivan,* 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927). The Third Circuit in *In re U. S. Hoffman Can Corp.,* 373 F.2d 622 (3d Cir. 1967) set forth the procedure for objecting to items in the schedules; the bankrupt is to state his claim personally before the judge. The reasoning of the court was that the judge has, "an affirmative duty . . . to safeguard the constitutional privilege when it is invoked and to be guided in making his determination by his personal perception of the peculiarities of the case in the light of the surrounding circumstances." The Second Circuit has stated that "[t]he focus of inquiry when information is sought over a claim of privilege is whether the hazards of self-incrimi-

nation are 'real and appreciable' as opposed to 'trifling or insubstantial.' " *U. S. v. Sahadi*, 555 F.2d 23, 26 (2d Cir. 1977).

More recently, my distinguished colleague, C. Albert Parente, Bankruptcy Judge, *In Matter of Bohack Corporation*, debtor, 74 B 933, E.D.N.Y., Aff. 464 F.Supp. 35 (E.D.N.Y.1978), Aff. C.A.2d, without opinion January 10, 1979, 78–5035, in dealing with the issue in a case involving refusal to answer on grounds of constitutional privilege by a witness in a Rule 205(a) examination noted:

"The phrase 'liberal construction' conveys a meaningful dictate of personal privilege engrained under our system of law. It does not, however, in my opinion, sanction refusal by a witness . . . to answer a question clearly prefatory and innocuous."

Simply put, prove your point and win it, refuse to do so and lose it. Yours is the burden, no stonewalling!

Thus, the bankrupt is not excused from his duty to file a statement of affairs with accompanying schedules by a blanket invocation of his Fifth Amendment privilege nor from answering those questions which are not incriminating. He must file the statement of affairs and schedules, claiming his privilege and establish his right to so claim, not merely assert it, with respect to specific items.

The many attempts by this court to undertake its responsibility and to discharge its affirmative duty of inquiry into the validity and genuineness of the invoking of a constitutional privilege by Jedwab were thwarted by him at each turn. Specifically, at the particular hearing set for that purpose on November 1, 1979 when the court invited him to testify and elucidate on his contention of a "fear of self-incrimination" he chose not to testify, rather, through his attorney, refused to testify and through him reiterated his personal unsubstantiated claim of constitutional privilege.

This court finds that as a matter of fact and law that Jedwab's claim of self-incrimination and of constitutional privilege not to file schedules and statement of affairs as directed by an order of this court are not real and appreciable, but rather the same are insubstantial, unreasonable and unwarranted.

As heretofore indicated, after the time to file memoranda by all parties had expired and while this issue was under consideration for decision and order by this court, Jedwab's attorneys, by letter dated November 28, 1979, sent a newspaper clipping from the *N.Y. Times* of November 28, 1979. The letter urged that "our client's fear of self-incrimination is real and not imaginary," by virtue of the contents of the article which reported that three officers of Luigi Goldstein's Inc. had been indicted by a Federal grand jury charged with fraud in a federally financed lunch program.

This very article, for the issue here involved, indicates to this court a different interpretation and conclusion than that arrived at by respondent's attorneys. The conclusion drawn by this court from the article, lacking evidence by the respondent's testimony or proof by his refusal to explain the basis for his "fear" is that notwithstanding that there had been an on-going investigation by the U.S. Attorney of all persons and entities involved in the school lunch program; that the books of all participants had been subpoenaed including those of Jedwab's corporation, the only result after more than a year was the indictment of three officers of another firm in no way connected with or related to the bankrupt corporation or to Jedwab personally.

This court finds that as a finding of fact and of law that Richard Jedwab is in contempt of this court for his failure to comply with the Order of this court dated March 19, 1979 directing him to file schedules and statement of affairs, and that his claim of a constitutional privilege against self-incrimination for refusal to comply with said Order is neither real nor substantial.

This court finds that the contempt of this court by Richard Jedwab is willful and deliberate and of such a serious nature as to require the certification by this court of his contempt to a Judge of the District Court.

This is an Order and the attorney for the Trustee is directed, within ten days of the date hereof, to submit a formal Order in accordance with Decision and Order together with a certificate certifying the respondent, Richard Jedwab, in contempt of court, to a Judge of the District Court of the United States District Court, Eastern District of New York.