UNITED STATES of America,
Plaintiff-Appellee,

v.

Harry M. JEFFERS, Jr., a/k/a Hal
Jeffers, Defendant-Appellant.

No. 79–5507.

United States Court of Appeals,
Fifth Circuit.

July 11, 1980.

Melvyn Carson Bruder, Dallas, Tex., for defendant-appellant.

Shirley Baccus-Lobel, Rebecca Gregory, Asst. U. S. Attys., Dallas, Tex., for the U. S.

Before BROWN, AINSWORTH and FRANK M. JOHNSON, Jr., Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Harry M. Jeffers, Jr., was indicted on two counts of failing to comply with the federal wagering tax laws, 26 U.S.C. § 4401 et seq. After a bench trial, he was convicted on both counts. Defendant appeals his conviction, claiming that the disclosure and reporting requirements of the federal wagering tax laws violate his Fifth Amendment privilege against self-incrimination, that there was no probable cause to issue warrants authorizing the police to search his person, his apartment and his automobile, and that he was entitled to disclosure of the unnamed Government informant. We affirm.

On September 8, 1978, IRS agent Murphy was introduced to an informant by a fellow IRS agent. The informant told Murphy that he had been placing wagers on sporting events with a person named Hal Jeffers at telephone number 350–7185. After a five week surveillance, Murphy executed an affidavit in support of three warrants authorizing the search of Harry Jeffers, his apartment and his automobile. The affidavits stated (1) that Murphy had received a tip by an unnamed informant that the defendant had engaged in gambling activities with the informant via a telephone with the number 350–7185; (2) that telephone number 350–7185 is an unlisted number for a phone located at an address where Jeffers' name appeared on the mailbox; (3) that Murphy's surveillance established that Jeffers spent a great deal of time in three certain lounges in Dallas, that the informant claimed he had contacted Jeffers at two of those lounges, and that Jeffers had no "visual means of support"; (4) that Jeffers owned and drove a certain car; (5) that "[t]he confidential informant . . . has been furnishing information to the Internal Revenue Service for the past several months. The information has related to wagering as well as to other tax matters and in each instance when corroborated has proven to be accurate, reliable and has been the basis for other investigations"; and (6) that Jeffers had been arrested the previous year and charged with gambling promotion.

The execution of these warrants resulted in the seizure of numerous pieces of gambling paraphernalia such as sport scheduling booklets, betting sheets, adding machine tapes, settlement sheets, and notebooks recording net wins and losses. During the search, the IRS agent answered approximately 42 phone calls from people wishing to place bets with "Hal." Jeffers was charged under Count 1 with engaging in wagering and failing to register and file a special tax return in violation of 26 U.S.C. § 7203, and under Count 2 with failing to pay a special wagering occupational tax, in violation of 26 U.S.C. § 7262. After defendant was found guilty of these charges, he received one year's probation for Count 1 and a $1,000 fine for Count 2.

On appeal, Jeffers argues that the disclosure and reporting requirements of the federal wagering tax laws violate his Fifth Amendment privilege against compulsory self-incrimination. Specifically, he asserts that under *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), both charges of the indictment are unconstitutional as applied to him.

The tax scheme in question imposes special tax record keeping and reporting obligations on persons engaged in the business of bookmaking. Section 4412 requires each person liable for the occupational tax to file a registration form with the IRS listing his name, place of residence, the names of his employees, and all addresses where his wa-

gering business is transacted.[1] After the bookmaker has registered and paid the occupational tax, he is issued a special tax stamp. Prior to 1968, Section 6806(c) required the registrant to display conspicuously his stamp at his place of business or carry it on his person if he had no place of business and to exhibit it upon demand to any Treasury Department personnel. Section 6107 required each principal internal revenue office to keep a public record of all those who had paid the special tax and to provide upon request certified copies of the record to any state or local prosecuting officer.

In 1968, the Supreme Court found that the wagering tax provisions then existing violated the defendant's Fifth Amendment privilege against self-incrimination in the companion cases of *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and *Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). In *Marchetti*, the defendant was convicted of a willful failure to pay the annual occupational tax imposed by 26 U.S.C. § 4411, and of a willful failure to register, as required by 26 U.S.C. § 4412. The Court reaffirmed the power of Congress to tax illegal activities, *see Marchetti, supra* at 44, 88 S.Ct. at 700; *License Tax Cases*, 72 U.S. 462, 5 Wall. 462, 18 L.Ed. 497 (1866), but it found three factors in the taxing scheme that gave rise to constitutional problems. First, Section 6107 required the principal internal revenue offices to provide to prosecuting officers a list of those who paid the occupational tax. Second, Section 6806(c)

required taxpayers to display conspicuously the revenue stamp and to produce it on demand. Third, the Court took notice that the IRS was in full cooperation with law enforcement agencies in suppressing organized gambling. *Marchetti, supra* 390 U.S. at 47–48, 88 S.Ct. at 702. Under these circumstances, the Court found that the obligations to register and pay the occupational tax created "real and appreciable" and not merely "imaginary and unsubstantial" hazards of self-incrimination. *Id.* at 48, 88 S.Ct. at 702. The Court made clear, however, that these statutes were only unconstitutional as applied, and "[i]f, in different circumstances, a taxpayer is not confronted by substantial hazards of self-incrimination, or if he is otherwise outside the privilege's protection, nothing we decide today would shield him from the various penalties prescribed by the wagering tax statutes." *Id.* at 61, 88 S.Ct. at 709.

In *Grosso*, the Court examined the monthly requirement of reporting wagering operations for the month connected to the excise tax imposed by 26 U.S.C. § 4411. *See* 26 U.S.C. § 6001; 26 C.F.R. § 44.-6011(a)–1. The Court noted that, although the IRS was not statutorily required to provide prosecutors with the information thus obtained, it was not statutorily restricted from doing so. In practice, the IRS was making the information available to prosecutors and when the taxpayer supplied the required information to the IRS, he might reasonably expect that this exchange would occur. Therefore, this practice also

---

1. 26 U.S.C. § 4412 provides:

§ 4412. Registration

(a) Requirement.—Each person required to pay a special tax under this subchapter shall register with the official in charge of the internal revenue district—

(1) his name and place of residence;

(2) if he is liable for tax under subchapter A, each place of business where the activity which makes him so liable is carried on, and the name and place of residence of each person who is engaged in receiving wagers for him or on his behalf; and

(3) if he is engaged in receiving wagers for or on behalf of any person liable for tax under subchapter A, the name and place of residence of each such person.

(b) Firm or company.—Where subsection (a) requires the name and place of residence of a firm or company to be registered, the names and places of residence of the several persons constituting the firm or company shall be registered.

(c) Supplemental information.—In accordance with regulations prescribed by the Secretary, he or his delegate may require from time to time such supplemental information from any person required to register under this section as may be needful to the enforcement of this chapter. Aug. 16, 1954, c. 736, 68A Stat. 527.

constituted a "real and appreciable" hazard of self-incrimination. *Id.* at 67, 88 S.Ct. at 713.

In both cases, the Court declined the Government's invitation to modify the wagering tax provisions by imposing restrictions on the use by federal and state authorities of information obtained as a result of the taxpayer's compliance with the tax requirements. It explained that granting such protection was more properly a legislative act but emphasized that the privilege against self-incrimination may not be properly asserted if the protection granted " 'is so broad as to have the same extent in scope and effect' " as the privilege itself. *Marchetti, supra* at 58, 88 S.Ct. at 708, quoting *Counselman v. Hitchcock*, 142 U.S. 547, 585, 12 S.Ct. 195, 206, 35 L.Ed. 1110 (1892). In response to *Marchetti* and *Grosso*, Congress made several statutory changes. Section 6806(c) was amended by deleting the requirement that registrants conspicuously display their tax stamp or produce it on demand. Section 6107 was repealed so that IRS agents were no longer required to provide wagering tax information to local law enforcement agencies. Finally, Congress enacted 26 U.S.C. § 4424 to

"resolve any remaining doubts which may exist under the rationale of the *Marchetti v. U. S.* . . . and *Grosso v. U. S.* . . . cases." 1974 U.S.Code Cong. and Admin. News, pp. 6228, 6233.

Section 4424 provides that no Treasury Department official or employee may disclose, except in connection with the administration of or the civil or criminal enforcement of internal revenue taxes, any document, record, or other information supplied by a taxpayer in connection with such taxes.[2] Furthermore, documents relating to such statutes in possession of the taxpayer may not be used in a criminal proceeding except to enforce the wagering tax provisions.[3] The question whether these post-*Marchetti* amendments provide taxpayers with protection which is as broad in scope and effect as the privilege against self-incrimination is one of first impression for this Court. We agree with the other Circuit that has addressed the issue and find the amendments to be constitutionally valid.

In *United States v. Sahadi*, 555 F.2d 23 (2d Cir. 1977), the Second Circuit found that the 1974 revisions and the concomitant change in Treasury Department practices

---

**2.** § 4424. Disclosure of wagering tax information

   (a) General rule.—Except as otherwise provided in this section, neither the Secretary nor any other officer or employee of the Treasury Department may divulge or make known in any manner whatever to any person—

   (1) any original, copy, or abstract of any return, payment, or registration made pursuant to this chapter,

   (2) any record required for making any such return, payment, or registration, which the Secretary is permitted by the taxpayer to examine or which is produced pursuant to section 7602, or

   (3) any information come at by the exploitation of any such return, payment, registration, or record.

   (b) Permissible disclosure.—A disclosure otherwise prohibited by subsection (a) may be made in connection with the administration or civil or criminal enforcement of any tax imposed by this title. However, any document or information so disclosed may not be—

   (1) divulged or made known in any manner whatever by any officer or employee of the United States to any person except in connection with the administration or civil or criminal enforcement of this title, nor,

   (2) used, directly or indirectly, in any criminal prosecution for any offense occurring before the date of enactment of this section.

   (c) Use of documents possessed by taxpayer.—Except in connection with the administration or civil or criminal enforcement of any tax imposed by this title—

   (1) any stamp denoting payment of the special tax under this chapter,

   (2) any original, copy, or abstract possessed by a taxpayer of any return, payment, or registration made by such taxpayer pursuant to this chapter, and

   (3) any information come at by the exploitation of any such document,
shall not be used against such taxpayer in any criminal proceeding.

   (d) Inspection by Committees of Congress. —Section 6103(f) shall apply with respect to any return, payment, or registration made pursuant to this chapter.

**3.** 26 U.S.C. § 4424(c). *See* note 2 *supra.*

have eliminated the "real and appreciable" hazards of self-incrimination that existed under the prior law since Section 4244 makes the tax disclosures unavailable to law enforcement authorities. *See also United States v. Stavros*, 597 F.2d 108, 114 (7th Cir. 1979) (compliance with federal laws "does not waive the defendant's Fifth Amendment right because the disclosures required by the federal law are kept confidential and are not available to law enforcement agencies"). Appellant takes issue with this holding, suggesting two ways in which the wagering tax information could become available to state prosecuting authorities. First, the information would become public if the defendant was involved in administrative, civil or criminal proceedings enforcing the tax code. Second, Jeffers claims that there is a high degree of cooperation between federal and local officials in Dallas, Texas, with respect to investigations of gambling offenses.

■ While we recognize that only immunity from the use of wagering tax information in subsequent criminal prosecutions for gambling would afford the defendant complete protection, *see United States v. Sahadi, supra* at 26,[4] we find that compliance with the present statutory scheme is adequate to guard against the dangers Jeffers cites. Unlike *Marchetti*, where "[t]he terms of the wagering tax system [made it] quite plain that Congress intended information obtained as a consequence of [compliance with the wagering tax laws] to be provided to interested prosecuting authorities," 390 U.S. at 58–59, 88 S.Ct. at 708, the present statutory scheme evinces a clear congressional intent of nondisclosure. The statute makes the information unavailable to law enforcement authorities and 18 U.S.C. § 1905 provides for fines and/or imprisonment and loss of employment for persons making unauthorized disclosure of confidential governmental information. The hypothetical situations Jeffers presents are too speculative for us to consider and would

deviate from the ordinary operation of the law. Jeffers presents no evidence that wagering tax information has actually been used in criminal prosecution for illegal gambling. If this occurs, we assume that the defendant would raise his argument in a motion in that proceeding that the disclosure requirements of the federal wagering tax laws violated his Fifth Amendment privilege against self-incrimination. Presumably, this would place the burden of proof on the prosecution to establish that its "evidence was untainted by any connection with information obtained as a consequence of the wagering taxes." *Marchetti v. United States*, 390 U.S. at 59, 88 S.Ct. at 708.

■ As his second ground for appeal, Jeffers urges that the affidavit supporting the search warrant was insufficient under the two-pronged *Aguilar-Spinelli* test and that his motion to suppress the fruits of the search should have been granted. *See Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The test requires that the affidavit disclose (1) " 'underlying circumstances' necessary to enable the magistrate independently to judge . . . the validity of the informant's conclusion" and (2) make some showing of reliability of the informant. *Spinelli v. United States*, 393 U.S. at 413, 89 S.Ct. at 587.

■ Jeffers argues that the second prong of the test was not met by the affidavit because it failed to state that the affiant had prior personal dealings with the informant or to include the identity of the IRS agent who vouched for the informant's credibility. "No averment by the police-officer explicitly endorsing the informant's reliability is required, however." *United States v. Weinrich*, 586 F.2d 481, 490 (5th Cir. 1978), *cert. denied*, 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979). It is sufficient that the affiant received his information regarding the informant's reliability from the IRS. *See United States v.*

---

4. 26 U.S.C. § 4424(b)(2) provides this type of immunity for criminal prosecutions for offenses occurring before 1974.

*Williams,* 603 F.2d 1168 (5th Cir. 1979); *Smith v. United States,* 358 F.2d 833, 835 (D.C. Cir. 1966), *cert. denied,* 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448 (1967). Moreover, the informant's statement was supported by independent corroborating evidence that the phone number the informant used to place wagers was an unlisted number located at Jeffers' address, that Jeffers had been arrested the previous year and charged with gambling promotion and that during a five week surveillance, Jeffers had no visible means of support and was seen at one of three lounges or at his apartment on a daily basis. *See United States v. Dominguez,* 615 F.2d 1093, 1096 (5th Cir. 1980); *United States v. Hall,* 545 F.2d 1008, 1009 (5th Cir. 1977). Finally, in telling the law enforcement agents that he had engaged in wagering, the informant made an admission against penal interest. As the Supreme Court has said, "[a]dmissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search." *United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971). *See United States v. Farese,* 612 F.2d 1376, 1378 (1980).

■ Jeffers also challenges the truthfulness of the affiant as to the recitations regarding the informant's credibility under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In *Franks,* the Supreme Court found that a defendant who alleges deliberate falsity or reckless disregard will be allowed to question the integrity of the affiant's representations. Before a defendant is entitled to an evidentiary hearing, however, his attack

> "must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard of the truth, and those allegations must be accompanied by an offer of proof. . . . Allegations of negligence or innocent mistake are insufficient." *Id.* at 171, 98 S.Ct. at 2685.

Defendant has met none of these requirements and therefore his claim is meritless.

His motion to suppress the fruits of the search was properly denied by the district court.

■ Jeffers' final contention, that the district court should have required the disclosure of the identity of the informant, is also without merit. There was no showing that the informant was a material witness to the offense charged or that his testimony was essential to Jeffers' defense, as in *Roviaro v. United States,* 353 U.S. 53, 61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957). It is difficult to understand how the informant would have aided in Jeffers' defense against the charges of failure to supply information and pay an occupational tax under the federal tax wagering laws. Moreover, the government introduced voluminous evidence aside from the informant's statement that indicated that Jeffers was engaged in bookmaking. *See United States v. Hare,* 589 F.2d 242, 243 (5th Cir. 1979); *United States v. Acosta,* 411 F.2d 627, 630 (5th Cir. 1969); *Bruner v. United States,* 293 F.2d 621, 622 (5th Cir. 1961).

AFFIRMED.